No. 88,334

In the Matter of the Appeal of Ford Motor Credit Company From a Denial of Refund of Kansas Retailers' Sales Tax, Dated March 31, 2000.

69 P.3d 612

Opinion filed May 30, 2003.

*Mark A. Burghart*, Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, argued the cause and was on the briefs for appellant Ford Motor Credit Company.

*John Michael Hale*, Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Ford Motor Credit Company (Ford Credit) filed a claim for a refund of sales tax paid on contracts that have

been written off as bad debts. The Department of Revenue (Revenue) denied the refund request. The Board of Tax Appeals (BOTA) affirmed. Ford Credit appealed. The court transferred the case from the Court of Appeals. K.S.A. 20-3018(c).

The sole issue on appeal is whether Ford Credit, assignee of installment sales contracts, is entitled to receive a sales tax refund when it sustains a loss due to consumers' defaulting on contracts.

The following facts are from a joint stipulation entered into by the parties in the proceeding before BOTA:

1. Ford Credit financed certain sales of motor vehicles by motor vehicle dealerships which qualify in Kansas as retailers under K.S.A. 2002 Supp. 79-3602.

2. Consumers desiring to purchase a vehicle were required to submit a credit application. The consumers then entered into retail installment contracts with the retailers that granted the retailers a security interest in the motor vehicles. These retailers reported each of the sales transactions on the accrual basis of accounting.

3. Pursuant to the terms of the contracts, the agreed upon purchase price and the sales tax due thereon was included in the total amount financed.

4. At the time the sales transactions between the retailers and the consumers were consummated, the full amount of the sales tax was paid to Revenue, even though the consumers financed the purchase price and the retailers' sales tax thereon over the term of the contracts.

5. Under the contracts, the consumers promised to pay and were contractually bound to pay the retailers' sales tax and other amounts due under the contracts over the term of the contracts.

6. For each sales transaction included in the refund claim, the retailers had assigned to Ford Credit all right, title, and interest in and to the contracts without recourse against the dealer by endorsing the special assignment provision.

7. Ford Credit paid the retailers the amount financed under the contracts, which included the sales tax due with respect to each transaction.

8. The retailers making the original vehicle sales have remitted to Revenue the appropriate amount of retailers' sales tax due in connection with each of the contracts.

9. Following the assignment of the contracts by the retailers to Ford Credit, Ford Credit was entitled to any and all payments from the consumers under the contracts.

10. After the assignment of the contracts to Ford Credit by the retailers, the retailers were relieved of their responsibility to collect the amounts owing under the contracts, including any uncollected sales tax due from the consumers to the retailers at the time of the transfer.

11. The contracts entitled Ford Credit to repossess the vehicles if the consumers defaulted on the contracts.

12. The consumers involved in each of the purchases included in the refund claim failed to make their payments and consequently, the contracts went into default.

13. Ford Credit repossessed and resold the motor vehicles that secured the defaulted contracts. Following the sale of the repossessed vehicles, Ford Credit applied the proceeds to the consumers' unpaid balances under the contracts.

14. After application of the proceeds of the sale of the repossessed vehicles to the unpaid balance on the contracts, each defaulted contract had a remaining unpaid balance of retailers' sales tax.

15. Ford Credit determined that the remaining unpaid balance under the contracts was uncollectible after repeated collection attempts. As an accrual basis taxpayer, Ford Credit wrote off the balance owed under each of the defaulted contracts as an uncollectible debt for federal income tax purposes.

16. On or about June 23, 1999, Ford Credit filed a refund claim for sales tax paid on vehicle sales which were charged off for federal income tax purposes as bad debts for the period November 30, 1995, through December 31, 1998. The refund claim sought to recover that portion of the tax that is applicable to the unpaid balance of each contract, based on the ratio determined in the schedules attached to the refund claim.

17. On or about July 16, 1999, Revenue denied the refund request.

18. On or about August 13, 1999, Ford Credit timely filed a written request for informal conference with the Kansas Secretary of Revenue under K.S.A. 79-3610.

19. On or about September 7, 1999, Revenue notified Ford that its request for informal conference filed on or about August 13, 1999, had been docketed.

20. On or about March 31, 2000, Revenue issued a written final determination upholding the refund denial that had previously been issued by Revenue.

BOTA found that the "right to a sales' tax refund" was not assigned by the retailers to Ford Credit in the assignment contract and, further, that Ford Credit is not a "retailer" as defined under 79-3602(d), because it was not "regularly engaged in the business of selling tangible personal property at retail," nor did Ford Credit "make the sale or remit the tax." BOTA concluded that

"tax refund provisions, like tax exemption statutes, should be strictly construed against the party seeking the refund. In light of the arguments presented by the parties, the Board finds that the assignment of the contracts to the Taxpayer did not assign a right to receive a retailers' sales tax refund. The Board concludes that the Taxpayer's appeal is denied."

Ford Credit's claim to a refund is made pursuant to K.S.A. 2002 Supp. 79-3609(b) and K.A.R. 92-19-3(b). It appeals from BOTA's order denying it that retailers' sales tax refund. BOTA's orders are subject to review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Action (KJRA), K.S.A. 77-601 *et seq*. Ford Credit seeks review of BOTA's order pursuant to K.S.A. 77-621(c)(4) which provides that we can grant relief if BOTA erroneously interpreted or applied the law.

In applying statutes and administrative regulations, the court grants considerable deference to the administrative agency charged with enforcing and implementing them. *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999); *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P.2d 1225 (1996). In addition, BOTA, as the specialized agency that exists to decide taxation issues, is given considerable deference in its decisions. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999). Although the court gives deference to the agencies, the final construction of statutes and regulations rests with the court. *United Teleservices*, 267 Kan. at 572. It is a fundamental rule of statutory construction that the intent of the legislature governs if that intent

can be ascertained. Interpretation of a statute is a question of law, and appellate review is unlimited. *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, Syl. ¶ 3, 38 P.3d 666 (2002). Administrative regulations have the force and effect of law. *Pemco, Inc. v. Kansas Dept. of Revenue*, 258 Kan. 717, 720, 907 P.2d 863 (1995). In construing tax statutes, refund provisions are construed strictly against the entity seeking a refund. The burden of proof is on the person asserting a claim for refund to bring himself or herself within the refund statute. *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 246, 891 P.2d 422 (1995). Tax laws are statutory and do not exist apart from the statutes. *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 845 P.2d 57 (1993).

Ford Credit contends the part of 79-3609(b) that sets a time limit of 3 years in which a taxpayer may file a claim for a refund or credit authorizes the refund of overpaid sales tax. Ford Credit also cites K.A.R. 92-19-3, subsection (b) in particular. The regulation implements 79-3609. K.S.A. 2002 Supp. 79-3609(b) provides:

"The amount of tax imposed by this act is to be assessed within three years after the return is filed, and no proceedings in court for the collection of such taxes shall be begun after the expiration of such period. In the case of a false or fraudulent return with intent to evade tax, the tax may be assessed or a proceeding in court for collection of such tax may be begun at any time, within two years from the discovery of such fraud. No assessment shall be made for any period preceding the date of registration of the retailer by more than three years except in cases of fraud. *No refund or credit shall be allowed by the director after three years from the date of payment of the tax as provided in this act unless before the expiration of such period a claim therefor is filed by the taxpayer*, and no suit or action to recover on any claim for refund shall be commenced until after the expiration of six months from the date of filing a claim therefor with the director." (Emphasis added to show portion relied on by Ford Credit.)

## K.A.R. 92-19-3 provides:

"(a) When a retailer makes credit, conditional, or installment sales, the retailer may pay tax on the total amount of collections made during each reporting period or, if the retailer's books are regularly kept on an accrual basis, on the total amount of sales accrued for each reporting period. When the retailer adopts one basis of reporting for sales tax purposes, the retailer shall not change from that basis without first obtaining the permission of the director of taxation.

"(b) If the retailer adopts the accrual basis for reporting taxable sales, the retailer shall account for all periodic adjustments to reported bad debts, including the final adjustment when debts are charged off the retailer's books for federal income tax purposes. If any portion of the bad debts is recovered after the final adjustment, the retailer shall include the recovery and tax in the next sales tax return.

"(c) When tangible personal property or taxable services are sold on deferred payments and the deferred payments are covered by a negotiable note or notes or an assignable conditional sales contract, the retailer shall remit the tax on the total selling price of the property or service at the time the sale is made and report it in the retailer's next sales tax return.

"(d) Interest, finance, or carrying charges on installment sales shall not be taxable when these charges are separately made and shown by the retailer on bills rendered to the consumer."

Revenue rejects Ford Credit's interpretation of these provisions. Revenue denies that either K.A.R. 92-19-3(b) or the statute it implements allows a retailer to obtain a *refund* for sales tax paid on a bad debt. Its position, as stated in its brief, is that the regulation

"provides that a retailer who uses the accrual method of accounting, when making an adjustment for a bad debt, can only make a deduction to the gross receipts the retailer reports on a periodic basis. In other words, the retailer makes the adjustments on an ongoing basis and reduces his tax liability on his next periodic report to the Department [of Revenue]. In essence it is a credit on the retailer's liability. If the retailer collects the bad debt previously charged off, then the retailer must add it back on in its next periodic report. There is no reference or authority for a refund for the bad debts."

A plain reading of the regulatory provision supports Revenue's position. The regulation requires the retailer to report all adjustments to reported bad debts and to remit the tax on any recoveries. It does not provide for refunds for retailers.

Nor does the statutory time limitation for filing refund claims, in the absence of some express statutory provision allowing refunds to retailers writing off bad debts, support Ford Credit's request for a refund. Where the legislature intended for refunds to be available to taxpayers under the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 *et seq.*, it clearly stated so. For example, in K.S.A. 79-3633 through K.S.A. 79-3638, the legislature expressly made refunds of sales tax paid on food available to persons of specified age or disability and household income. In K.S.A. 79-3640, the legislature

expressly allowed refunds of sales tax paid on property or services purchased for political subdivision projects. In K.S.A. 79-3645, the legislature expressly allowed refunds of sales tax paid for supplies and services used to prevent soil erosion on land subject to the federal Conservation Reserve Program.

If Ford Credit's claim were for a refund, and only a refund, the inquiry would be over. Ford Credit, however, also mentions a credit: "The retail dealers would have been eligible for a credit or refund had consumers defaulted prior to assignment to Ford [Credit]. Ford [Credit], as assignee, is entitled the same remedies that were available to the retail dealers in the event of a default." Revenue, too, as demonstrated by its not mentioning the absence of authority for refunds until the end of its brief, seems to expect the court to consider a sales tax credit. Furthermore, BOTA phrased the issue before it as whether an assignee can claim a bad debt credit or refund.

Because Revenue concedes that bad debt credits are available to retail automobile dealers, the remaining question is whether Ford Credit is eligible for such a credit. Ford Credit posits two sources for its eligibility—it is a retailer within the meaning of the statutory/regulatory scheme and it received the right to claim a credit through assignment from the automobile sellers.

Ford Credit contends that, because it sells repossessed vehicles from defaulting consumers, it fits within the definition of "retailer" in K.S.A. 2002 Supp. 79-3602(d). The statute defines "retailer" as "a person regularly engaged in the business of selling tangible personal property at retail . . . and selling only to the user or consumer and not for resale." Ford Credit cites *Personal Thrift Plan of Wichita, Inc. v. State*, 229 Kan. 622, 629 P.2d 184 (1981), for the proposition that it is a retailer under the statute. In that case, the court held that a finance company is a retailer within the meaning of the Kansas Retailers' Sales Tax Act when it sells repossessed items of tangible personal property to consumers. Hence, the finance company was required to collect sales tax from those who purchased the repossessed items from it and remit the sales tax to Revenue. The case does not touch upon the question whether the

finance company was a retailer with regard to the sale preceding default and repossession.

Examination of K.A.R. 92-19-3 reveals no indication that Revenue intended for the regulation's provisions to be applied to a retailer other than the retailer that collected sales tax and remitted it to Revenue. By its terms, the regulation applies to credit, conditional, or installment sales. K.A.R. 92-19-3(a). It permits *"the* retailer" that makes the credit, conditional, or installment sales to pay tax on total collections during a reporting period or, "if *the* retailer's books are regularly kept on an accrual basis," to pay tax on total sales accrued for the reporting period. K.A.R. 92-19-3(a). The regulation requires *"the* retailer" to "remit the tax on the total selling price of the property or service at the time the sale is made and report it in *the* retailer's next sales tax return." K.A.R. 92-19-3(c). And the regulation requires *"the* retailer" that uses the accrual basis for reporting taxable sales to account for all adjustments to reported bad debts. K.A.R. 92-19-3(b).

Ford Credit contends that, as the assignee of the installment sales contracts, it steps into the shoes of *"the* retailer" so as to be eligible for the sales tax credit on bad debts. Ford Credit cites cases from other states' courts as recognizing the assignment of the right to assert a sales tax refund claim in the absence of specific statutory authority.

In *PSNB v. Department of Revenue*, 123 Wash. 2d 284, 868 P.2d 127 (1994), a sales tax refund statute was at issue that provided: "A seller is entitled to credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes." Wash. Rev. Code § 82.08.037. The statutory definition of seller was a person making sales at retail, and the statutory definition of person included an assignee. 123 Wash. 2d at 287. A majority of the Washington Supreme Court held that the bank, as assignee of automobile installment sales contracts, was entitled to a tax refund under the statute. The majority found no statutory or policy prohibition on assignment of a sales tax refund and reasoned that, because tax liabilities may be assigned, tax benefits ought to be assignable, too. 123 Wash. 2d at 288-92. The dissenting justices disagreed with the majority's broad interpretation of the statutory

definition of seller to include assignee as a misreading and as a violation of the maxim that tax refund statutes are to be strictly construed. 123 Wash. 2d at 293-95. They noted in particular that the statutory definition of seller did not include assignee but that the definition of buyer did, which strongly suggests that the legislature did not intend seller to include assignee, and that the phrase, "making sales at retail," which qualified "person" was disregarded by the majority. 123 Wash. 2d at 294.

In *Slater Corp. v. South Carolina Tax Com'n*, 314 S.E.2d 31 (S.C. App. 1984), a food service company that purchased food in order to prepare and serve meals at educational institutions sought a refund on the sales tax it had paid to sellers of food supplies. Slater Corp. was prompted to request the refund by the state's highest court's decision that the company purchased food as a wholesaler. By statute, " 'the taxpayer, by whom or on whose behalf the . . . tax was paid' " was permitted to apply for refund of tax "erroneously, improperly or illegally assessed, collected or paid." Slater argued that it was a taxpayer within the meaning of the statute; the Tax Commission took the position that only the food supply sellers were eligible to seek refunds as taxpayers. "Slater then filed with the Commission certain assignments from the [food supply] sellers who had assigned to Slater their refund claims for the taxes paid," and the Tax Commission denied refund to Slater on the ground that the refund claims could not be assigned. 314 S.E.2d at 32. The South Carolina Court of Appeals reversed, stating that Slater's contention with regard to the statutory definition may have merit, but deciding the question on the ground that "the assignments which Slater received from the sellers from whom it purchased the food supplies are valid transfers of their rights to a refund of the taxes which Slater paid." 314 S.E.2d at 33.

In *Chrysler Financial v. Dept. of State Rev.*, 761 N.E.2d 909 (Ind. Tax 2002), a finance company that purchased installment sales contracts from automobile dealers for the full amount due under the contracts, including sales tax, sought a sales tax refund pursuant to that state's "Bad Debt" statute, Ind. Code § 6-2.5-6-9. The statute provides:

"(a) In determining the amount of state gross retail and use taxes which he must remit under section 7 of this chapter, a retail merchant shall deduct from his gross retail income from retail transactions made during a particular reporting period, an amount equal to his receivables which:

(1) Resulted from retail transactions in which the retail merchant did not collect the state gross retail or use tax from the purchaser;

(2) Resulted from retail transactions on which the retail merchant has previously paid the state gross retail or use tax liability to the department; and

(3) Were written off as an uncollectible debt for federal tax purposes during the particular reporting period.

"(b) If a retail merchant deducts a receivable under subsection (a) and subsequently collects that receivable, then the retail merchant shall include the amount collected as part of his gross retail income from retail transactions for the particular reporting period in which he makes the collection."

Because the statute was silent on the question whether a retail merchant may assign its rights to a deduction and did not expressly forbid assignments like some other Indiana statutes, the Tax Court looked to the common law and concluded that automobile dealers may assign their rights. 761 N.E.2d at 912-13. The Tax Court further concluded that Chrysler Financial qualified for the deduction under the statute, whether or not it was a "retail merchant" within the meaning of the statute, because Chrysler Financial, as assignee, stands in the shoes of the automobile dealers, which indisputably are retail merchants. 761 N.E.2d at 914.

Revenue would distinguish *PSNB* on the ground that the Washington bank was assigned the tax liability, so that it was obligated to collect and remit sales tax included in the installment payments. Revenue misconstrues the facts of the Washington case. With regard to assignment of tax liability, the court stated:

"An important policy reason for permitting the assignment of a tax refund claim under RCW 82.08.037 is to ensure that commercial paper continues to travel freely in the marketplace. If this court permits assignment of certain contractual or statutory rights, while prohibiting others, parties to an assignment will be unable to determine what rights and liabilities transfer in assignment. This dilemma will only breed inconsistencies and uncertainty into the law of assignment. For example, an assignment should generally transfer both a tax liability and a tax benefit. Under RCW 82.08.090, the Legislature empowered the Department to adopt appropriate regulations whereby the Department may collect taxes on installment sales along with each of the buyer's installment payments. The Department has not adopted such regulations, but instead requires the tax to be remitted in the

period in which the sale occurs. WAC 458-20-198, -235. However, if sales taxes were collected in installments, RCW 82.08.050 would impose on the seller the responsibility for collecting the tax from the buyer with each installment payment. This leads to a dilemma for the Department, for if the seller assigns the installment contract, then that assignee must assume the tax burden of collecting the tax from the buyer. The tax liability of a seller under RCW 82.08.050 would be transferred to the assignee. The Department agrees. Notwithstanding this position, the Department maintains that the tax *benefit* of a seller under RCW 82.08.037 may not likewise be transferred by assignment. It is inconsistent and capricious for the Department to hold that an assignment transfers a tax *liability* but not a tax *benefit*." 123 Wash. 2d at 290-91.

On a sounder ground than with its tax liability argument, Revenue approves the dissent's construction of statutory definitions and application of rules of statutory construction rather than those of the majority. In particular, Revenue agrees with the dissenting justices that the phrase, "making sales at retail," that modifies "person" cannot be disregarded and that tax credit or refund statutes are to be construed strictly against an entity seeking a credit or refund.

Revenue does not address Ford Credit's reliance on *Slater Corp.* Ford Credit cited the case for the court's recognizing that tax refunds are assignable. Because the assignment in that case was from the retailer that collected and remitted the sales tax to the purchaser that paid the sales tax, *Slater Corp.* is factually distinguishable from the present case.

Revenue disagrees with the Indiana Tax Court's reversion to common law where the tax statutes were silent on assignment. Revenue characterizes the Tax Court's reasoning as authorizing refund by implication. This court has stated that "[t]ax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced." *Fleming Company v. McDonald*, 212 Kan. 11, Syl. ¶ 1, 509 P.2d 1162 (1973).

Revenue cites *Department of Revenue v. Bank of America*, 752 So. 2d 637 (Fla. Dist. App. 2000), for the proposition that the automobile dealers cannot assign an inchoate right to receive a sales tax refund in the event that the purchaser defaults in the future and sale of the repossessed vehicle does not satisfy the un-

paid balance on the sales contract. Florida Statutes, Section 212.17 states in part:

"(1)(a) In the event purchases are returned to a dealer by the purchaser or consumer after the tax imposed by this chapter has been collected from or charged to the account of the consumer or user, the dealer shall be entitled to the reimbursement of the amount of tax collected or charged by the dealer, in the manner prescribed by the department.
. . . .

"(2) A dealer who has paid the tax imposed by this chapter on tangible personal property sold under a retained title, conditional sale, or similar contract, or under a contract wherein the dealer retains a security interest in the property pursuant to chapter 679, may take credit or obtain a refund for the tax paid by the dealer on the unpaid balance due him or her when he or she repossesses (with or without judicial process) the property within 12 months following the month in which the property was repossessed. When such repossessed property is resold, the sale is subject in all respects to the tax imposed by this chapter.

"(3) A dealer who has paid the tax imposed by this chapter on tangible personal property or services may take a credit or obtain a refund for any tax paid by the dealer on the unpaid balance due on worthless accounts within 12 months following the month in which the bad debt has been charged off for federal income tax purposes. If any accounts so charged off for which a credit or refund has been obtained are thereafter in whole or in part paid to the dealer, the amount so paid shall be included in the first return filed after such collection and the tax paid accordingly." See 752 So. 2d at 641.

According to a bulletin issued by the Executive Director of Florida's Department of Revenue, when the dealer sells an installment sales contract to a third party without recourse, the statute precludes both the original seller and the third party from obtaining a refund of sales tax remitted to the State on the original transaction. 752 So. 2d at 642. Perhaps significant in the Department's construction was the legislature's declaration of legislative intent that "the tax levied by this chapter and imposed by this section is not a tax on motor vehicles as property but a tax on the privilege to sell . . . motor vehicles." Section 212.081(2)(a); see 752 So. 2d at 640. The Florida Court of Appeals agreed with the agency's interpretation of the statute:

"Since the issue in this case involves a tax refund, general principles of statutory construction, together with the principles governing proper construction of tax statutes, should prevail over general assignment principles. In this vein, it is reasonable to assume the legislature is cognizant of the business practice of dealers

with regard to assignment of installment contracts to banks, yet the legislature has not enacted an express authorization for refund of sales tax to the dealers' assignees. Further, the plain language of section 212.17(2) and (3) limits such tax refunds to dealers who retain a security interest in the installment contracts. Other provisions of Chapter 212 expressly state that the tax is due upon sale, because the tax is levied upon the privilege of transacting business." 752 So. 2d at 643.

Revenue characterizes Florida's statutory scheme as very nearly identical with that of Kansas, but the express provisions of the two are hardly comparable. As we have seen, the Florida Legislature declared the sales tax on vehicles to be a tax on the privilege to sell them. There is no similar provision in the Kansas Sales Tax Act. A significant difference between the two states' schemes is the presence in Florida and the absence in Kansas of an express statutory provision for the refund or credit of sales tax where a security interest is retained in an installment contract.

In the revenue agencies' implementation of the statutes, too, the states have taken different paths. The Florida agency's bulletin interpreted that state's statutes as cutting off any right to a sales tax credit or refund with the sale of an installment contract without recourse. K.A.R. 92-19-3, the regulation promulgated by Revenue, permits a retailer to reduce its tax liability for a bad debt.

The key question is whether, where the installment sales contract was purchased by a third party, a retailer permitted to reduce its tax liability for a bad debt must be the retailer that remitted sales tax on the defaulted installment sale. Revenue maintains that Ford Credit, the third party, is not a retailer within the meaning of the Act. Ford Credit is regularly engaged in the business of financing and, as necessary, it repossesses and resells the vehicles it finances. Thus, it may incidentally be a retailer of repossessed vehicles, but it is not a retailer with regard to the sale preceding default and repossession. Strictly construing K.A.R. 92-19-3(b) would permit only the retailer who sells a vehicle and, in this case, remits the sales tax to the State to reduce its tax liability for a bad debt.

Another state that has denied a finance institution's claim for a refund of sales tax paid in connection with automobile purchases is Tennessee. Neither party cited *SunTrust Bank, Nashville v.*

*Johnson*, 46 S.W.3d 216 (Tenn. App. 2000). There, the court quoted the pertinent statutory and regulatory provisions which limit refunds to the dealer that paid the tax:

"A dealer who has paid the tax imposed by this chapter on any sale as defined in § 67-6-102 may take credit in any return filed under the provisions of this chapter for the tax paid by the dealer on the unpaid balance due on accounts which, during the period covered by the current return, have been found to be worthless and are actually charged off for federal income tax purposes; provided, that if any accounts so charged off are thereafter in whole or in part paid to the dealer, the amounts so paid shall be included in the first return filed after such collection and the tax paid accordingly." Tenn. Code Ann. § 67-6-507(e)(1); see 46 S.W.3d at 225.

The Tennessee Department of Revenue's regulation implementing the statute provides:

"A bank or other financial institution purchasing contracts 'without recourse' from dealers selling tangible personal property may not claim any deduction or credit for any unpaid balances remaining due on any property which has been sold by the other dealer on a security agreement or other title retained instrument, and later repossessed, or which resulted from any other action to enforce the lien." Tenn. Comp. R. & Regs. r. 1320-5-1-.52(2) (2000); see 46 S.W.3d at 225 n. 4.

The Tennessee Court of Appeals concluded: "By the statute's plain terms, the sales tax credit is available only to the 'dealer who has paid the tax imposed by this chapter.' This language is unambiguous and cannot reasonably be construed to include the assignees of dealers who have paid the sales tax." 46 S.W.3d at 225.

Revenue, unlike its Tennessee counterpart, did not promulgate a regulation plainly stating that third parties that purchase installment contracts cannot claim a sales tax deduction or credit. Revenue's purpose in promulgating K.A.R. 92-19-3 seems to have been more basic—to spell out payment of sales tax and adjustments for bad debts on credit, conditional, and installment sales. Although Revenue did not expressly exclude the third parties from making adjustments for bad debts, the intent that may reasonably be inferred from its language was for credit for sales tax to be limited to the retailer who sold the vehicle. Neither the statute or regulation include the assignee of the retailer. Although not specifically limited to the retailer paying the tax, the definition of retailer is

not broad enough to include the assignee of such retailer. We will not extend by implication the clear import of that definition to include an assignee of the retailer.

Ford Credit also argues that the right to refund is a chose in action and that all choses in action are assignable. "A chose in action is the right to bring an action to recover a debt, money, or thing." *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 423, 52 P.3d 898 (2002). Any right to a sales tax refund would be a statutory right, however, not a common-law principle.

In *SunTrust Bank*, the Tennessee Court of Appeals rejected a similar argument that the right to a tax refund can be assigned. The court noted that "[n]owhere in the assignment does the dealer explicitly assign to the bank its right to obtain a bad debt sales tax credit . . . ." Thus, such a right to the credit was not assigned to SunTrust. As to the general principle of the law of assignments that assignee steps into the shoes of the assignor, the court said: "We understand and approve of the policy favoring the free assignability of commercial instruments. However, in this context, the traditional principles of statutory construction applicable to statutes granting tax credits, deductions, or exemptions, should prevail over general assignment principles." 46 S.W.3d at 226.

We find the rationale of the Tennessee court to be persuasive. Ford Credit is not entitled to a sales tax refund or credit pursuant to K.S.A. 2002 Supp. 79-3609(b) and K.A.R. 92-19-3(b). The order of BOTA denying Ford Credit's appeal of the Department of Revenue's denial of a retailers' tax refund or credit is affirmed.

ABBOTT, J., not participating.

LARSON, S.J., assigned.