DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC *v.* COMMISSIONER OF REVENUE SERVICES
(SC 17277)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 9—officially released June 28, 2005

*Peter O. Larsen*, with whom were *Donald E. Frechette* and, on the brief, *David E. Otero*, pro hac vice, and *William E. Murray*, for the appellant (plaintiff).

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, DaimlerChrysler Services North America, LLC, appeals from the judgment of the trial court dismissing the plaintiff's appeal from the decision of the defendant, the commissioner of revenue services, denying the plaintiff's claim for a sales tax refund under General Statutes § 12-408 (2) (B).[1] Specifi-

---

[1] General Statutes § 12-408 provides in relevant part: "(1) Imposition and rate of sales tax. For the privilege of making any sales, as defined in subdivision (2) of subsection (a) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of six per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale in accordance with subdivision (2) of subsection (a) of section 12-407 . . . .

"(2) Retailer collects tax from consumer. Credit allowed for tax remitted to state on worthless account receivable. (A) Reimbursement for the tax hereby imposed shall be collected by the retailer from the consumer and such tax reimbursement, termed 'tax' in this and the following subsections, shall be paid by the consumer to the retailer and each retailer shall collect from the consumer the full amount of the tax imposed by this chapter or an amount equal as nearly as possible or practicable to the average equivalent thereof. . . .

"(B) Whenever such tax, payable by the consumer . . . to a retailer who computes taxable income, for purposes of taxation under the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, on the cash basis method of accounting with respect to a sale occurring on or after July 1,

cally, the plaintiff claims that the trial court improperly concluded that: (1) the "retailer" that is entitled to the refund under § 12-408 (2) (B) is limited to the retailer that made the original sale and remitted the sales tax to the defendant; and (2) the right to a refund or credit under the statute is not assignable by the retailer that made the original sale to a third party absent explicit statutory or contractual language conferring such a right. We disagree, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. During the period relevant to this appeal, the plaintiff was engaged in the business of selling and leasing automobiles to consumers in Connecticut. More significantly for the purposes of this appeal, the plaintiff also provided financing for automobiles sold by other retail automobile dealers to consumer purchasers in Connecticut. In each of the plaintiff's financing transactions, the dealer forwarded the potential buyer's credit application to the plaintiff. After the plaintiff had approved the application, the purchaser executed a contract with the dealer to pay in installments the purchase price of the vehicle, inter-

---

1989, is remitted by the retailer to the commissioner [of revenue services] and such sale as an account receivable is determined to be worthless, the amount of such tax remitted may be credited against the tax due on the sales tax return filed by the retailer for the monthly or quarterly period, whichever is applicable, next following the period in which such amount is actually so written off, but in no event shall such credit be allowed later than three years following the date such tax is remitted, unless the credit relates to a period for which a waiver is given pursuant to subsection (g) of section 12-415. The commissioner shall, by regulations adopted in accordance with chapter 54, provide standards for proving any such claim for credit. If any account with respect to which such credit is allowed is thereafter collected by the retailer in whole or in part, the amount so collected shall be included in the sales tax return covering the period in which such collection occurs. The tax applicable in any such case shall be determined in accordance with the rate of sales tax in effect at the time of the original sale. . . ."

est and the applicable sales tax and to grant the dealer a security interest in the vehicle. After the purchaser had executed the installment contract with the dealer, the dealer in turn would execute an assignment of the installment contract to the plaintiff. In exchange for the assignment, the plaintiff paid the dealer the total amount financed, including the sales tax, less any down payment made by the purchaser. The dealer then remitted to the defendant the sales tax, which became due at the time of the initial sales transaction. When the plaintiff received an installment payment from the purchaser, it credited that payment on a pro rata basis against the entire amount financed, including the sales tax.

Certain purchasers defaulted on their payment obligations under their installment contracts. After the defaults, an unpaid balance remained on the purchasers' accounts, even after the unpaid balance was reduced by any proceeds from the sale of a repossessed vehicle. The plaintiff wrote off the unpaid balances as worthless and uncollectible for federal income tax purposes. On or about February 17, 2000, the plaintiff filed a claim with the defendant, pursuant to § 12-408 (2) (B), for a sales tax refund to recover the sales tax the plaintiff had paid on the uncollected balances in the amount of $977,668.76 for the period from January 1, 1997, through December 31, 1999. The defendant thereafter issued notice to the plaintiff of a proposed disallowance of the tax refund sought. The plaintiff timely filed a written protest, however, on April 8, 2002, the defendant issued a final determination that the plaintiff was not entitled to relief pursuant to § 12-408 (2) (B). Specifically, the defendant concluded that a bad debt refund could be obtained only by the retailer that had made the original sale and had remitted directly the sales tax to the defendant, which the plaintiff admittedly had not done in the present case. The defendant further

noted that the claim did not contain complete information to support its validity.

The plaintiff subsequently appealed from the defendant's decision to the trial court. The trial court granted the plaintiff's motion to bifurcate the issues of liability and damages. The plaintiff then filed a motion for partial summary judgment on the issue of liability, claiming that it was entitled to the refund under § 12-408 (2) (B) either in its own right as a "retailer" or as an assignee of the retail dealers' rights.

The trial court concluded that § 12-408 (2) (B) clearly refers to the first level purchase of the automobile between a consumer and a dealer. The court rejected the plaintiff's claim that the focus of the statute is on the retailer that charged off the debt. It further concluded that the statute clearly applies only to the retailer who directly remitted the sales tax to the defendant. The trial court noted that to interpret the statute otherwise impermissibly would rewrite its text. With respect to whether the plaintiff was entitled to relief pursuant to the assignment of the retail dealers' rights under the statute, the trial court determined that common-law principles of assignment could not be applied to the present case without consideration of established tax principles. The court therefore concluded that, because the right to a sales tax refund is a statutory right, not a common-law right, that right is not assignable absent explicit statutory or contractual language. Accordingly, the trial court denied the plaintiff's motion for partial summary judgment. In reliance upon the reasoning of the trial court's decision, the defendant thereafter filed a motion for summary judgment, which the trial court granted. This appeal followed.[2]

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff contends that the trial court improperly concluded that: (1) the term "retailer" within the meaning of § 12-408 (2) (B) applies only to the retailer that made the original sale and remitted the sales tax to the defendant; and (2) the right to a refund or credit under the statute generally is not assignable to a third party. We disagree with both of these claims.

We first set forth the well established principles guiding our review. With respect to the defendant's construction of § 12-408, we note "that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . The [defendant] does not claim that [his] interpretation of the statute is time-tested. Accordingly, we exercise plenary review over the plaintiff's claims." (Citation omitted; internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 13–14, 803 A.2d 879 (2002). We do so according to general principles of statutory construction and specific rules of construction of tax statutes. General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." When the relevant statutory text and the relationship of that text to other statutes do not reveal a meaning that is plain and unambiguous, our analysis is not limited, and we look to other factors relevant to determining the meaning of § 12-408, including its legislative history, the circumstances surrounding its enactment and its purpose. *Nine State*

*Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 46, 850 A.2d 1032 (2004). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004).

"The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . [Moreover] [w]e strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of [other taxpayers]." (Internal quotation marks omitted.) *Interlude, Inc.* v. *Skurat*, 266 Conn. 130, 140, 831 A.2d 235 (2003). With these principles in mind, we turn to the plaintiff's claims.

I

Section 12-408 (2) (B) provides a mechanism by which a "retailer" may obtain a tax credit for sales tax that the retailer has remitted to the defendant after a tax debt from a consumer has become worthless. Regs., Conn. State Agencies § 12-408-1. The plaintiff contends that the trial court improperly concluded that it is not a "retailer" within the meaning of § 12-408 (2) (B). Specifically, the plaintiff asserts that it is entitled to the credit because it is a retailer as that term is defined under the tax statutes; see General Statutes § 12-407 (a);[3] in that it engages in the business of making retail

[3] General Statutes § 12-407 (a) provides in relevant part: "Whenever used in this chapter . . .

"(12) 'Retailer' includes: (A) Every person engaged in the business of making sales at retail or in the business of making retail sales at auction

sales of automobiles and because it has the requisite permit from the state pursuant to General Statutes § 12-409 to make such sales. The plaintiff further asserts that, as used in § 12-408 (2) (B), the term "retailer" applies to the retailer who actually charged off the bad debt.

The defendant contends that a plain reading of § 12-408 (2) (B) establishes that the tax credit is available

of tangible personal property owned by the person or others; (B) every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use or other consumption; (C) every operator, as defined in subdivision (18) of this subsection; (D) every seller rendering any service described in subdivision (2) of this subsection; (E) every person under whom any salesman, representative, peddler or canvasser operates in this state, or from whom such salesman, representative, peddler or canvasser obtains the tangible personal property that is sold; (F) every person with whose assistance any seller is enabled to solicit orders within this state; (G) every person making retail sales from outside this state to a destination within this state and not maintaining a place of business in this state who engages in regular or systematic solicitation of sales of tangible personal property in this state (i) by the display of advertisements on billboards or other outdoor advertising in this state, (ii) by the distribution of catalogs, periodicals, advertising flyers or other advertising by means of print, radio or television media, or (iii) by mail, telegraphy, telephone, computer data base, cable, optic, microwave or other communication system, for the purpose of effecting retail sales of tangible personal property, provided such person has made one hundred or more retail sales from outside this state to destinations within this state during the twelve-month period ended on the September thirtieth immediately preceding the monthly or quarterly period with respect to which such person's liability for tax under this chapter is determined; (H) any person owned or controlled, either directly or indirectly, by a retailer engaged in business in this state which is the same as or similar to the line of business in which such person so owned or controlled is engaged; (I) any person owned or controlled, either directly or indirectly, by the same interests that own or control, either directly or indirectly, a retailer engaged in business in this state which is the same as or similar to the line of business in which such person so owned or controlled is engaged; (J) any assignee of a person engaged in the business of leasing tangible personal property to others, where leased property of such person which is subject to taxation under this chapter is situated within this state and such assignee has a security interest, as defined in subsection (37) of [General Statutes §] 42a-1-201, in such property; and (K) every person making retail sales of items of tangible personal property from outside this state to a destination within this state and not maintaining a place of business in this state who repairs or services

only to the original seller who remitted the tax. We disagree that the statute is unambiguous in the context of a party that otherwise satisfies the statutory definition of a retailer. In other words, the fact that the plaintiff is a retailer pursuant to § 12-407 (a) (12) that may collect sales tax from a consumer does not answer how to construe that term as applied to a party who, though not otherwise obligated to pay that tax pursuant to § 12-408 (2) (A), nevertheless indirectly has paid the tax to the defendant through the dealer and is now seeking to obtain a tax credit pursuant to § 12-408 (2) (B). We conclude, nonetheless, that the statute, when read in light of the tax scheme generally and its legislative history, limits the tax credit to the retailer in the initial sales transaction that directly remitted the tax to the defendant.

As with all issues of statutory interpretation, we begin with the pertinent language. Subsection (1) of § 12-408 imposes a sales tax on "the gross receipts of any retailer from the sale of all tangible personal property sold at retail," and subsection (2) (A) of that section requires that "[r]eimbursement for the tax hereby imposed shall be collected by the retailer from the consumer . . . ." Subsection (2) (B) of § 12-408 then provides in relevant part: "*Whenever such tax . . . is remitted by the retailer to the commissioner [of revenue services]* and such sale as an account receivable is determined to be worthless and is actually written off as uncollectible for federal income tax purposes . . . *the amount of such tax remitted may be credited* against the tax due on the sales tax return filed by the retailer for the monthly or quarterly period . . . ." (Emphasis added.)

As the plaintiff correctly notes, the term "retailer" is defined elsewhere in the tax statutes. See footnote 3

such items, under a warranty, in this state, either directly or indirectly through an agent, independent contractor or subsidiary. . . ."

of this opinion. It is undisputed that, as a general matter, the plaintiff is a retailer when acting in the context of selling automobiles as compared to financing automobile sales by other retail dealers. The issue, therefore, is whether the plaintiff is a "retailer" for purposes of obtaining a sales tax credit under § 12-408 when another retail dealer makes the sale to the consumer and remits the sales tax to the defendant, but the plaintiff incurs a bad debt from its financing of the sales taxes it paid to the other retail dealer.

Although § 12-408 does not state expressly that the only retailer that may obtain a tax credit is the retailer that actually sold the goods to the consumer, it does refer expressly to the retailer that has remitted the sales tax in question to the defendant. Because, however, subsections (1) and (2) (A) of § 12-408 make clear that the retailer that makes the sale to the consumer is obligated to pay sales tax to the defendant and to collect that sales tax "from the consumer," the only logical inference is that the tax credit is available only to the retailer that, having made the sale, is obligated to collect and remit the tax. In other words, the statute's benefit goes hand in hand with its obligation. It is clear that the plaintiff never was obligated statutorily to collect the sales tax from the consumer nor to remit that sales tax to the defendant for the financing transactions at issue.[4]

We also note that the statute provides for a tax "credit," not a "refund" as claimed by the plaintiff. This fact is significant because the credit is to be applied against sales tax owed on future sales tax returns. See General Statutes § 12-408 (2) (B) ("the amount of such

---

[4] Indeed, in light of the fact that the consumers paid a down payment to the dealer prior to the assignment of the contract to the plaintiff, it is entirely possible that the consumers' down payment could have provided the funds from which the dealer paid the tax to the defendant, rather than the funds from the plaintiff.

tax remitted may be credited against the tax due on the *sales tax return* filed by the retailer for the monthly or quarterly period . . . next following the period in which such amount is actually so written off [as uncollectible]" [emphasis added]). Financing companies do not sell goods at retail, they finance goods sold by others, and hence do not file sales tax returns. Thus, such companies are not eligible to claim the credit. We further note that the credit is available against the retailer's sales tax returns for up to a three year period. If the retailer obtains a tax credit from the state and thereafter is able to collect on the bad debt, the amount "collected by the retailer . . . shall be included in the sales tax return covering the period in which such collection occurs." General Statutes § 12-408 (2) (B). Thus, the "credit" mechanism strongly suggests that the credit remains with the retailer involved in the initial sales transaction.

Therefore, the plaintiff essentially is asking to be treated differently than other financing companies that might be similarly situated with bad sales tax debt simply because it acts as a retailer when engaged in the business of selling cars rather than the business of providing financing. This incongruity and inequity would be an impermissibly irrational reading of the statute. See *Hartford Courant Co.* v. *Freedom of Information Commission,* 261 Conn. 86, 101, 801 A.2d 759 (2002) (citing "well established canon of statutory construction 'that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results' "). The more logical construction would be that the credit is available only to the retailer who made the sale and remitted the tax to the defendant rather than a financing company in the plaintiff's position because the former is in a position to claim the credit, whereas the latter is not.

The legislative history of § 12-408 also supports the conclusion that the legislature intended to provide relief to the retailer that actually sells directly to the consumer and thereby becomes an obligor under the sales tax statute. The legislature enacted the provision in 1984 "to allow a retailer to claim a sales and use tax credit [for] any sales tax paid on a worthless account." 27 H.R. Proc., Pt. 10, 1984 Sess., p. 3681, remarks of Representative Ronald L. Smoko. At the legislative hearing on the bill, Representative Smoko, the bill's sponsor, explained its purpose: "What the bill will do is to allow a retailer to claim a sales and use tax credit . . . [for] any sales tax paid on a worthless account. As we all know, if a retailer sells a product on time, if [sixty] days elapse, he has paid the sales tax and has no mechanism in which to recoup even though he has not been paid, so in essence, he is out both the sales tax and the merchandise. . . . [With this bill] at least he won't be out the sales tax. He'll only be out the merchandise." Id., p. 3681. Representative Kenneth L. Przybysz expressed support for the bill out of a concern for the retailers who made the sales and bore the obligation to remit the sales tax to the defendant. At the legislative hearing, Representative Przybysz lamented: "I might add to everyone in this [c]hamber that we do have the highest state sales tax in the nation, and that retailers raise approximately 40 [percent] of our state revenues . . . without any cost to the state, that means without any pension benefits and other expenses. I . . . don't believe that these people should have to pay money to the state which they have never collected. I urge the passage of the bill." Id., p. 3683. Representative Alan R. Schlesinger voiced a similar sentiment: "It's not fair that a retailer and other consumers pick up the costs of the sales tax for an item that was never collected, and therefore, it's just passed on to the consumer as an extra cost in the items that they purchase. It's unfair.

It's wrong, and we ought to support this type of legislation to clear up this inequity." Id., p. 3687.

This legislative history reveals that the legislature intended the sales tax credit to benefit the retailer that made the original sale and remitted the sales tax to the defendant. First, the discussion places great emphasis on the retailer who made the actual sale and suffered the loss of the merchandise, as well as the consumers to whom those retailers are likely to pass on the expense.[5] Second, by referencing the percentage of state revenue raised by retailers via sales tax payments and focusing on the unfairness of requiring a retailer to swallow the cost of sales tax that never was collected, the legislature made it clear that its concern was for the retailer *who bore the obligation* to remit the sales tax to the defendant. See id., p. 3683, remarks of Representative Przybysz ("I . . . don't believe that these people *should have to pay* money to the state which they have never collected" [emphasis added]).

Accordingly, we conclude that the trial court properly determined that the only retailer eligible for a sales tax credit pursuant to § 12-408 (2) (B) is the retailer that made the original sale and bore the obligation to remit the sales tax to the defendant. To hold otherwise would be inconsistent with the statutory language, its legislative history, and our fundamental policy of strictly construing tax exemptions and credits against the taxpayer.

[5] At the hearing on the bill, in response to a question regarding whether gas stations and body shops would be covered under the bill, Representative Smoko stated that the bill would apply to "any retailer . . . *selling something on credit* with the sales and use tax . . . ." (Emphasis added.) 27 H.R. Proc., supra, p. 3688. This remark, in addition to those previously quoted, evidence the legislature's intent that the bill apply only to the retailer who made the actual sale. Indeed, these remarks also suggest that the legislature likely was concerned about small retailers who may have provided goods on credit to customers. Unlike the plaintiff, these small retailers would be unlikely to have the advantage of repossessing and reselling the consumer goods at issue to recover some of the bad debt.

That the plaintiff may in other circumstances act as a "retailer" is immaterial. See *In the Matter of the Appeal of Ford Motor Credit Co.*, 275 Kan. 857, 869, 69 P.3d 612 (2003) ("The key question is whether, where the installment sales contract was purchased by a third party, a retailer permitted to reduce its tax liability for a bad debt must be the retailer that remitted sales tax on the defaulted installment sale. . . . [Ford Motor Credit Company] is regularly engaged in the business of financing and, as necessary, it repossesses and resells the vehicles it finances. Thus, it may incidentally be a retailer of repossessed vehicles, but it is not a retailer with regard to the sale preceding default and repossession. Strictly construing [Kansas Administrative Regulations §] 92-19-3 (b)[6] would permit only the retailer who sells a vehicle and, in this case, remits the sales tax to the State to reduce its tax liability for a bad debt.").

To the extent that finance companies and those situated similarly to the plaintiff incur bad debt and that there is an inequity in that they cannot obtain relief, it is the legislature's province to grant such relief, not the court's. "The legislature is in a far better position than the courts to balance the myriad of factors necessary to formulate policy on matters that so intimately concern the state budget. We must respect the legislative

---

[6] Section 92-19-3 of the Kansas Administrative Regulations provides in relevant part: "(a) When a retailer makes credit, conditional, or installment sales, the retailer may pay tax on the total amount of collections made during each reporting period or, if the retailer's books are regularly kept on an accrual basis, on the total amount of sales accrued for each reporting period. When the retailer adopts one basis of reporting for sales tax purposes, the retailer shall not change from that basis without first obtaining the permission of the director of taxation.

"(b) If the retailer adopts the accrual basis for reporting taxable sales, the retailer shall account for all periodic adjustments to reported bad debts, including the final adjustment when debts are charged off the retailer's books for federal income tax purposes. If any portion of the bad debts is recovered after the final adjustment, the retailer shall include the recovery and tax in the next sales tax return. . . ."

prerogative of choosing the special circumstances under which such [tax credits] may be made." (Internal quotation marks omitted.) *Doe* v. *State*, 216 Conn. 85, 111, 579 A.2d 37 (1990).

## II

We next turn to the plaintiff's claim that the trial court improperly concluded that the right to a credit under § 12-408 (2) (B) is not assignable to a third party absent explicit statutory or contractual language conferring such a right. In support of this contention, the plaintiff cites the common-law right to assign contractual rights and several decisions from other jurisdictions in which that right has been recognized in this context. See *People ex rel. Stone* v. *Nudelman*, 376 Ill. 535, 537–39, 34 N.E.2d 851 (1940) (holding that common-law principle of assignment trumps general tax principle that statutes authorizing refund of taxes are to be strictly construed); *Chrysler Financial Co., LLC* v. *Dept. of State Revenue*, 761 N.E.2d 909, 914 (Ind. Tax 2002) (applying common-law principles of assignment to allow assignee to claim tax refund or credit where tax statute providing for refund or credit was silent with respect to assignment question); *Laing* v. *Forest*, 139 Mich. 159, 161, 102 N.W. 664 (1905) (same); *State ex rel. Great Northern Railway Co.* v. *State Board of Equalization*, 121 Mont. 583, 591, 194 P.2d 627 (1948) (same); *Slater Corp.* v. *Tax Commission*, 280 S.C. 584, 587–88, 314 S.E.2d 31 (1984) (same); *Puget Sound National Bank* v. *Dept. of Revenue*, 123 Wash. 2d 284, 289, 868 P.2d 127 (1994) (holding that absent express provision in statute prohibiting assignment, assignment of sales tax refund is permitted so long as it does not violate public policy).

The defendant cites an essentially equal number of jurisdictions that reach the contrary result. See *Dept. of Revenue* v. *Bank of America*, 752 So. 2d 637, 643

(Fla. App. 2000); *In the Matter of the Appeal of Ford Motor Credit Co.*, supra, 275 Kan. 871; *DaimlerChrysler Services North America* v. *State Tax Assessor*, 817 A.2d 862, 866 (Me. 2003); *In the Matter of General Electric Capital Corp.*, 301 App. Div. 2d 819, 820, 754 N.Y.S.2d 84 (2003), aff'd, 2 N.Y.3d 249, 810 N.E.2d 864, 778 N.Y.S.2d 412 (2004); *Chrysler Financial Co., LLC* v. *Wilkins*, 102 Ohio St. 3d 443, 448, 812 N.E.2d 948 (2004); *Suntrust Bank, Nashville* v. *Johnson*, 46 S.W.3d 216, 226 (Tenn. App. 2000). The defendant contends that the approach taken by these jurisdictions is more in conformity with our strict rules of construction for statutes providing tax exemptions or credits. We agree with the defendant.

It is undisputed that, as an assignee of the automobile dealers, the plaintiff is entitled to all of the rights and obligations incident to the purchase contracts, including the right to recover the full purchase price and sales tax for the vehicles from the purchasers. See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 227–28, 828 A.2d 64 (2003) (holding that assignee steps in shoes of assignor and obtains all rights and obligations of assignor, including chose in action, which is " '[t]he right to bring an action to recover a debt, money, or thing' "). As an initial matter, we note that, at the time of the assignment, the automobile dealers themselves did not yet possess a right to a sales tax credit because the purchase contracts were not then in default and had not yet been written off by the dealers as worthless and uncollectible debts. Therefore, it is highly questionable whether the dealers could in fact assign the plaintiff a right that they did not yet possess.[7] Indeed, several

---

[7] To the extent that the trial court's conclusion suggests that explicit contractual language conferring the right to the sales tax credit to an assignee would be sufficient to transfer the right, we need not address this question in the present case as the plaintiff has not presented evidence of any such language in its assignments from the automobile dealers, but we doubt whether an express assignment would confer such conditional rights yet to come into existence.

courts have rejected the claim presented here on such a basis. See *Dept. of Revenue* v. *Bank of America*, supra, 752 So. 2d 642 ("We are cognizant of the policy favoring the assignability of contract and statutory rights. Nevertheless, we agree with the [d]epartment [of revenue] that the [automobile] dealer cannot assign a right to receive a sales tax refund which the dealer does not possess at the time of the assignment."); *Chrysler Financial Co., LLC* v. *Wilkins,* supra, 102 Ohio St. 3d 448 (noting that express assignment from original retailer to plaintiff of "bad-debt reduction" would be invalid because retailer would not have suffered bad debt at time of assignment).[8]

More significantly, we note that the right to the sales tax credit being claimed by the plaintiff arises by virtue of a statute, not by the purchase contracts that were assigned to the plaintiff. See *In the Matter of the Appeal of Ford Motor Credit Co.,* supra, 275 Kan. 871 (rejecting

---

[8] The Ohio Supreme Court explained, when rejecting this identical argument made by the same plaintiff as in the present appeal: "Assume, for purposes of discussion, that the assignment of the retail installment contract to [the plaintiff, Chrysler Financial Company, LLC (Chrysler)] included an assignment of any claim the [automobile] dealer had to a bad-debt deduction, that this specific assignment was specified in the general assignment, and that an assignment of such a claim to a deduction could be made. Has Chrysler succeeded to a claim for a bad-debt deduction? To answer that question we must consider whether the dealer had a claim for a bad-debt deduction. If the dealer never had a claim for a bad-debt deduction to assign, Chrysler cannot assert an assignment of such a claim.

"Prior to the sale and assignment of the retail installment contract to Chrysler, the dealer had no claim to a bad-debt deduction, because the dealer had no bad debt. After the retail installment contract was assigned to Chrysler, and the dealer had been paid in full, the dealer could not claim a bad-debt deduction. After the dealer assigned the retail installment contract to Chrysler, the customer's debt to the dealer was paid in full, including any amount owed to the dealer for sales tax. As far as the dealer is concerned, the sale of the retail installment contract to Chrysler produces the same result as if the customer had paid off the contract. Thus, the dealer never suffered any bad debt that it could assert or that Chrysler could assert as the dealer's assignee." *Chrysler Financial Co., LLC* v. *Wilkins,* supra, 102 Ohio St. 3d 448.

Ford Motor Credit Company's claim that right to refund under Kansas' bad debt statute is chose in action and that all choses in action are assignable, Kansas Supreme Court stated that "[the] right to a sales tax refund would be a statutory right . . . not a common-law principle"). Thus, the right is not one incident to the contract and assignable on that basis. Indeed, the statutory right is not even one as between the original contracting parties—the automobile dealer and the purchaser—but, rather, one as between the dealer and the defendant. Accordingly, there is no right to assignment under the contract, but only a right *if* one is conferred pursuant to statute.

We therefore turn to the statute in the present case, § 12-408, which does not permit expressly an assignment of the right to the tax credit. Because the right to assign the credit would expand the class to whom the credit is available, we do not construe the legislature's silence to permit assignment of that right. As we noted previously, "[e]xemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is *strictly within their terms*." (Emphasis added; internal quotation marks omitted.) *Interlude, Inc.* v. *Skurat*, supra, 266 Conn. 140. Indeed, as we previously have noted, the legislature may revise a statute, but this court cannot engraft provisions for relief unless compelled to do so in order to effectuate and harmonize the statutory scheme.

The common thread among most of the decisions cited by the plaintiff is that they reach their conclusion based on common-law principles of assignment without regard for the general rules for construing tax provisions. Our approach, however, is in accord with the majority of jurisdictions that have considered the statutory origin of the right to tax relief. See, e.g., *Dept. of Revenue* v. *Bank of America*, supra, 752 So. 2d 643 ("[s]ince the issue in this case involves a tax refund,

general principles of statutory construction, together with the principles governing proper construction of tax statutes, should prevail over general assignment principles"); *In the Matter of General Electric Capital Corp.*, supra, 301 App. Div. 820 (The Appellate Division of the New York Supreme Court stated, with respect to New York's bad debt statute: "It cannot be doubted that the statute, as written, refers to credits or refunds only to vendors inasmuch as only vendors are possessed of 'taxable receipts' . . . . Accordingly, there was nothing irrational in promulgating [a statute] which limited such credits or refunds to vendors and excluded third-party assignees." [Citation omitted.]); *In the Matter of the Appeal of Ford Motor Credit Co.*, supra, 275 Kan. 870–71 ("Although not specifically limited to the retailer paying the [sales] tax, the definition of retailer [in the relevant statute and regulation] is not broad enough to include the assignee of such retailer. We will not extend by implication the clear import of that definition to include an assignee of the retailer."); *Suntrust Bank, Nashville* v. *Johnson,* supra, 46 S.W.3d 226–27 (in rejecting claim for bad debt credit by assignee bank, Tennessee Court of Appeals stated that, "in this context, the traditional principles of statutory construction applicable to statutes granting tax credits, deductions, or exceptions, should prevail over general assignment principles"); see also *DaimlerChrysler Services North America* v. *State Tax Assessor,* supra, 817 A.2d 866 ("[t]ax credits are conferred by legislative grace and are not assignable as a contractual right in the absence of either explicit contractual or statutory language"). We similarly conclude that, absent an express indication from the legislature that such a right could be assigned, the plaintiff cannot invoke the tax credit by virtue of its status as an assignee.

The plaintiff nonetheless contends that these rules of construing tax statutes essentially are trumped by

another rule of construction dictating that the legislature expressly must state if it intends to abrogate a common-law right, such as the right of assignment here. See *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001) (courts will construe statute to change common law " 'only if the language of the legislature plainly and unambiguously reflects such an intent' "). For the reasons already discussed, our construction of § 12-408 does not abrogate the common-law right of assignment. The plaintiff is not barred from exercising the common-law rights assigned under the contract, rather, it is barred from attempting to invoke statutory rights not expressly permitted.

The plaintiff also relies on our Appellate Court's decision in *National Loan Investors Ltd. Partnership* v. *Heritage Square Associates*, 54 Conn. App. 67, 733 A.2d 876 (1999). In that case, the Appellate Court held that the plaintiff, as an assignee of the Federal Deposit Insurance Corporation (FDIC), could reap the benefit of a federal statute that afforded the FDIC an extended statute of limitations to sue on promissory notes in order to facilitate the recovery of the assets of failed banking institutions and was silent as applied to assignees. Id., 73–74. That case readily is distinguishable from the present case for two reasons. First, the Appellate Court reached its conclusion based in large part on the policy underlying the federal statute, which the court found to be consistent with allowing the extended limitations period to apply to assignees. Id. "The policy underlying this rule [that an assignee stands in the shoes of the assignor] is to assure the holder in due course a free market for the [promissory note]. . . . Thus, [e]xtending the benefit of the [f]ederal [s]tatute of [l]imitations to purchasers of defaulted assets furthers the statute's purpose because it enhances the marketability of these assets by permitting purchasers a longer period of time to bring suit . . . ." (Citations omitted; internal

quotation marks omitted.) Id., 73–75. In the present case, we already have concluded that the legislature intended for the benefit of § 12-408 (2) (B) to extend only to the retailer who made the original sale and actually remitted the sales tax to the defendant. The second reason that *National Loan Investors Ltd. Partnership* is distinguishable is that the Appellate Court relied on federal precedent that established that the "right to sue within the extended limitations period is inherent in the possession of the instruments [the assignee] holds, and *is among the rights, remedies and benefits which are incidental to the instrument assigned . . . .*" (Emphasis added; internal quotation marks omitted.) Id., 76. In the present case, it is clear that as an assignee of the automobile dealers, the plaintiff did receive all of the rights and obligations incident to the purchase contracts. The statutory right to a sales tax credit simply was not among them. Accordingly, we conclude that the trial court properly determined that the right to a tax credit under § 12-408 (2) (B) is not assignable to a third party absent explicit statutory language authorizing such an assignment.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and VERTE-FEUILLE, Js., concurred.

ZARELLA, J., concurring. I concur in the result reached by the majority. I also fully concur in part II of the majority opinion. I disagree, however, with the analysis contained in part I insofar as it resorts to the use of legislative history.

A sales tax is "imposed" upon any retailer in accordance with General Statutes § 12-408, which provides in relevant part: "For the privilege of making any *sales . . .* a tax is *. . .* imposed on all retailers at the rate of six per cent of the gross receipts of any retailer *from*

*the sale of all tangible personal property sold at retail
. . . .*" (Emphasis added.) General Statutes § 12-408 (1).
"Sale" is defined in General Statutes §12-407 to include
"[a]ny transfer of title, exchange or barter, conditional
or otherwise, in any manner or by any means whatso-
ever, of tangible personal property for a consideration
. . . ." General Statutes § 12-407 (a) (2) (A). Upon
reviewing the relevant text of these two sections, it is
clear that, in order for a sales tax to be imposed upon
a retailer, the retailer must have transferred title to
the personal property in question for consideration.
Therefore, under the facts of the present case, no tax
was "imposed" upon the plaintiff, DaimlerChrysler Ser-
vices North America, LLC, by the defendant, the com-
missioner of revenue services, for the sale of a vehicle
because the plaintiff did not execute the "sale," i.e., it
did not transfer title to the vehicle for consideration.

In addition, the statutory scheme requires the con-
sumer to reimburse the retailer for the tax that is
"imposed" by the defendant. See General Statutes § 12-
408 (2) (A) ("*[r]eimbursement* for the tax hereby
*imposed* shall be collected by the retailer from the
consumer" [emphasis added]). Under the facts of the
present case, therefore, § 12-408 (1) did not obligate the
consumer to reimburse the plaintiff for the tax imposed
because no tax was "imposed" on the plaintiff. Never-
theless, a sales tax was imposed on the automobile
dealers by the defendant and remitted by those dealers.

Finally, § 12-408 (2) (B) provides for the rebate of
the tax remitted by the retailer under certain conditions.
That statute provides: "Whenever *such tax, payable by
the consumer* . . . is *remitted by the retailer* to the
commissioner and such sale as an account receivable
is determined to be worthless and is actually written
off as uncollectible for federal income tax purposes
. . . the amount of such tax *remitted* may be credited
against the tax due on the sales tax return filed by the

*retailer* . . . ." (Emphasis added.) General Statutes § 12-408 (2) (B). Therefore, only a retailer that (1) transferred title to tangible personal property, (2) had a tax imposed upon it by the defendant as a result of the transfer, and (3) remitted the tax to the defendant, is entitled to any potential credit under § 12-408 (2) (B). Inasmuch as the plaintiff did not transfer title to the tangible personal property and had no tax imposed upon it by the defendant, it cannot be deemed a retailer for purposes of obtaining a credit under the statutory scheme. I find nothing unclear or "absurd or unworkable" about the text of the statutory scheme that would warrant this court's consideration of legislative history for interpretive guidance. General Statutes § 1-2z. Therefore, I would apply the clear language of the text of the relevant statutes. See General Statutes § 1-2z.