119 P.3d 135 (2005)
DEPARTMENT OF TAXATION, Appellant,
v.
DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, F/K/A Chrysler Financial Company, LLC, Respondent.
No. 42117.
Supreme Court of Nevada.
September 15, 2005.
Brian Sandoval, Attorney General, and Joshua J. Hicks, Senior Deputy Attorney General, Carson City, for Appellant.
Kolesar & Leatham, Chtd., and Kenneth A. Burns, Las Vegas; Akerman Senterfitt and Peter O. Larsen and David E. Otero, Jacksonville, Florida, for Respondent.
Before the Court En Banc.

OPINION
ROSE, J.
In this case, we consider whether a person who provides primary financing of a retail sale may exercise the retailer's right to sales tax refunds from the State under Nevada's bad-debt statute, NRS 372.365(5). We conclude that the statute unambiguously precludes a finance company from obtaining tax refunds and therefore reverse.

FACTS AND PROCEDURAL HISTORY
Respondent, DaimlerChrysler Services North America, LLC, financed numerous retail motor vehicle purchases within the State of Nevada. Under these arrangements, the *136 purchasers agreed to repay all or part of the purchase price, including a pro rata portion of sales tax incurred, on an installment or credit basis. As part of these sales, the dealers assigned to DaimlerChrysler all of the dealers' rights associated with the contracts without recourse. In exchange for the assignments, DaimlerChrysler paid the dealers the full amount financed under the contracts, including the full amount of sales tax. From this amount, the dealers remitted the sales tax to the Nevada Department of Taxation (Department). The contracts at issue eventually went into default and, after exhausting collection and repossession efforts, DaimlerChrysler determined that the unpaid balances were uncollectible. It ultimately claimed the unpaid amounts as bad-debt deductions on its federal income tax returns for the years 1997 through 1999.
DaimlerChrysler applied to the Department under NRS 372.365(5) for a sales tax refund proportionate to the unpaid amounts. The Department denied the refund request, and an administrative hearing officer later denied a petition for redetermination. DaimlerChrysler then appealed to the Nevada Tax Commission (Commission), which unanimously upheld the hearing officer's decision. Subsequently, the district court granted DaimlerChrysler's petition for judicial review, concluding that DaimlerChrysler was entitled to a sales tax refund. The Department appeals.

DISCUSSION
The Department argues on appeal that DaimlerChrysler does not qualify for bad-debt relief under NRS 372.365(5).[1] We agree.
"[Q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law, which this court reviews de novo."[2] When the language of a statute is unambiguous, this court gives that language its ordinary meaning unless it is clear that this meaning was not intended.[3]
NRS 372.365(5) states:
5. If a retailer:
(a) Is unable to collect all or part of the sales price of a sale, the amount of which was included in the gross receipts reported for a previous reporting period; and
(b) Has taken a deduction on his federal tax return pursuant to 26 U.S.C. § 166(a) for the amount which he is unable to collect,
he is entitled to receive a credit for the amount of sales tax paid on account of that uncollected sales price.
To summarize, this statute allows for relief if (1) the entity requesting the relief is a retailer, (2) the retailer is unable to collect all or part of the sales price, (3) the sale was included in gross receipts, and (4) the retailer has taken a deduction on its federal income tax equal to the uncollectible amount. NRS 372.055 defines retailers for the purposes of NRS Chapter 372 as "[e]very seller who makes any retail sale or sales of tangible personal property," and "[e]very person making more than two retail sales of tangible personal property during any 12-month period."[4] NRS 372.040 defines "persons" as including, among others, individuals, firms or assignees.
DaimlerChrysler argues that, as the retailers' assignee, it stands in the retailers' shoes for the purpose of sales tax refunds under NRS 372.365(5). Because this court has not had occasion to reach this question, DaimlerChrysler asks that we embrace Puget Sound National Bank v. Department of Revenue, in which the Washington Supreme Court addressed a statute similar to NRS 372.365(5).[5] The statutory scheme at issue in Puget Sound entitled retail sellers to "a credit or refund for sales taxes previously paid on debts which are deductible as worthless for *137 federal income tax purposes,"[6] defined "sellers" as "person [s]" making retail sales,[7] and defined a "person" as including an "assignee."[8] Within that framework, the court determined that third-party financing entities given rights under retail credit assignment agreements were eligible to claim bad-debt sales tax refunds.[9]
We decline to adopt the Washington approach in this instance. Most states confronted with a finance company's claim that it is entitled to a bad-debt tax credit have denied the finance company relief for a variety of reasons.[10] Like Washington, Ohio's bad-debt statutes are similar to Nevada's in that they include an "assignee" in the definition of a "person."[11] The Ohio court, in Chrysler Financial Co., L.L.C. v. Wilkins, strictly interpreted its statute in denying a finance company relief because the statute was granting something similar to a tax exemption, which it concluded should be strictly interpreted.[12] Other states that have considered a finance company's claim to a bad-debt credit have also used strict construction of the statute to deny the requested relief.[13]
The most recent case on the subject from the Connecticut Supreme Court[14] rejected the same argument made by the respondent in this case by relying, in part, on strict statutory construction. The Connecticut court first stated that:
"The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption.... Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms."[15]
It went on to observe that the right to assign the retail tax credit was not expressly given by the state legislature to anyone and therefore it is a common-law right to assignment that DaimlerChrysler claimed. And, between a general common-law right to assign and the statutory right to a tax credit, the Connecticut court concluded that the principle of strict statutory construction of tax statutes must prevail.
The common thread among most of the decisions cited by the plaintiff is that they reach their conclusion based on common-law principles of assignment without regard for the general rules for construing tax provisions. Our approach, however, is in accord with the majority of jurisdictions that have considered the statutory origin of the right to tax relief. We similarly conclude that, absent an express indication from the legislature that such a right could be assigned, the plaintiff cannot invoke the tax credit by virtue of its status as an assignee.[16]
*138 We conclude that the plain meaning of NRS 372.365(5) compels the same result as that reached in the Ohio and Connecticut cases.[17]
In two other recent cases, the Arkansas Supreme Court determined that a finance company was not entitled to a tax credit because it was not the entity responsible for paying the tax.[18] Instead, under the statute, the actual motor vehicle consumer was responsible for paying the taxes.[19] Similarly, in Nevada, the retailer is responsible for remitting the sales tax to the state.[20] Further, the bad-debt statute makes no reference to entities providing retail credit financing. Therefore, only the original retailers, and not the finance companies lending money for the purchase, should be allowed to claim the tax credit.
Additionally, Nevada's statutory scheme differs from that at issue in Puget Sound in that NRS Chapter 372 includes an anti-assignment statute. NRS 372.700 states:
A judgment may not be rendered in favor of the plaintiff in any action brought against the Department to recover any amount paid when the action is brought by or in the name of an assignee of the person paying the amount or by any person other than the person who paid the amount.

(Emphasis added.) By its explicit terms, Nevada's anti-assignment statute only affords relief to persons who paid the taxes in the first instance. Applying the plain meaning of this statute, as we have concluded we must, DaimlerChrysler's refund claims fail because it never paid any sum by way of sales tax to the Department during the period at issue.
Going further, the statute explicitly provides relief in the form of a "credit," not a refund.[21] The State explains that, under the previous statutory construct, a bad-debt credit actually operated as a refund. However, in 1997, the Legislature amended the statute and clarified that when a retailer is unable to collect previously paid sales taxes, that retailer is entitled to a "credit" against ongoing sales tax obligations.[22] The use of the word "credit" in a similar statute was enough to persuade the Maine Supreme Court to conclude that only retailers with sales tax liability could avail themselves of the statute.[23] In that case, the court determined DaimlerChrysler to be ineligible for the bad-debt credit in part because there was no evidence it had any existing sales tax liability.[24] This reasoning is persuasive. Under the basic claims provision governing this controversy, the retailer, not the lender, physically forwards tax payments to the Department and incurs future obligations as sales continue against which credit may be assessed. Third-party lenders such as DaimlerChrysler never develop such balances with the Department. Thus, the provision's use of the credit device for relief structurally eliminates third-party lenders from its protection.
*139 DaimlerChrysler claims that it is entitled to the relief requested because the definition of a retailer includes any "person" engaged in retail sales, and the definition of a "person" includes an assignee.[25] We disagree. First, it should be noted that these definitions are contained at the beginning of NRS Chapter 372, the Sales and Use Tax Act, and apply generally to the entire Act; they are not specifically tailored to the bad-debt provisions contained later in the Act. Second, we have already concluded that the plain meaning of a tax statute will prevail over general principles of assignment unless there is an express provision permitting the assignment and granting an assignee the benefit of the tax credit. Nevada law contains no such express provision, and we have previously held that a tax exemption should be strictly construed.[26] Third, piling definition upon definition in order to reach the conclusion in this case that DaimlerChrysler was entitled to the bad-debt tax credit produces a distorted view of the facts at hand. The bad-debt tax credit is given to a retailer who included the sales in its gross receipts. DaimlerChrysler was not a retailer for these purposes. We should not permit the bootstrapping of several broad definitions to unreasonably distort the uncontested facts of a case or defeat a clear statutory directive.
Even if we assume that the statute is ambiguous, the statute's legislative history and a host of statutory construction principles combine to repel DaimlerChrysler's claim. This court has held that an agency's opinion on the application of an ambiguous statute should be given deference[27] and undoubtedly the Department does not believe DaimlerChrysler is entitled to any bad-debt credit. Nevada law also provides that omissions of subject matters from statutory provisions are presumed to have been intentional.[28] Here, the Legislature could have clearly provided that those financing a retailer's sale were entitled to the bad-debt tax credit, but it did not do so.
The legislative history of NRS 372.365(5) also indicates that the bad-debt credit should not be available to finance companies. In discussions about this statute before the Assembly Committee on Taxation, Assemblyman John Marvel asked Mary Lau, executive director of the Retailers Association of Nevada, if she had developed any figures on uncollected debts during any one year on the original fiscal note.[29] Ms. Lau replied that they had adjusted the fiscal note and "[t]hey also did it only for the retailer that sold the goods; it was not for third party credit."[30] Mr. Marvel then stated that he understood that the first retailer was responsible for collecting the tax and remitting it to the Department and "[s]ubsequently the retailer would file for a refund if the debt [was] not collectible."[31] He was informed that that was the way the law was written and passed the last session, "but now it would be a credit against the tax" and immediately due and payable.[32] Because the statutory credit can only be assessed against a preexisting sales tax liability, the measure's legislative history validates the Department's contention that these credits are provided exclusively for the benefit of the retailer. As noted, having never incurred a sales tax liability, the third- party lender can develop no sales tax liability balance against which the credit would be applied.

CONCLUSION
NRS 372.365(5) does not afford DaimlerChrysler bad-debt relief. Accordingly, we *140 reverse the district court's order granting DaimlerChrysler's petition for judicial review.
BECKER, C.J., GIBBONS, DOUGLAS and PARRAGUIRRE, JJ., concur.
MAUPIN, J., dissenting.
I dissent to the result reached by the majority. In my view, as stated by Justice Hardesty, DaimlerChrysler qualifies as a retailer under Chapter 372 of the Nevada Revised Statutes. Also, in my view, DaimlerChrysler was the entity/person who actually paid the entirety of the sales taxes to the Nevada Department of Taxation under NRS 372.700. Thus, DaimlerChrysler is entitled to bad-debt relief under NRS 372.365(5).
HARDESTY, J., dissenting.
In my view, the district court correctly concluded that the bad-debt statute, NRS 372.365(5), in the Nevada Sales and Use Tax Act, applies to providers of installment retail credit.
"[Q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law, which this court reviews de novo."[1] When the language of a statute is unambiguous, this court gives that language its ordinary meaning unless it is clear that this meaning was not intended.[2]
NRS 372.365(5) provides as follows:
5. If a retailer:
(a) Is unable to collect all or part of the sales price of a sale, the amount of which was included in the gross receipts reported for a previous reporting period; and
(b) Has taken a deduction on his federal tax return pursuant to 26 U.S.C. § 166(a) for the amount which he is unable to collect,
he is entitled to receive a credit for the amount of sales tax paid on account of that uncollected sales price. The credit may be used against the amount of sales tax that the retailer is subsequently required to pay pursuant to this chapter.
DaimlerChrysler satisfies each of the four elements summarized by the majority to qualify for bad-debt relief under NRS 372.365(5). Neither the statute nor its application in this case is ambiguous. The majority does not dispute DaimlerChrylser's claim that it was unable to collect all or part of the sales price, that the sales in question were included in the retailer's gross receipts reported to the Department, or that it took a deduction for the uncollectible amount on its federal income tax return. To reach its result, however, the majority concludes that DaimlerChrysler is not a retailer under the Sales and Use Tax Act.
NRS 372.055(1)(c) defines retailers to include "[e]very person" making more than two retail sales during any 12-month period.[3] NRS 372.040 defines "person" under this statutory scheme as including, among others, assignees. The majority asserts that these statutory definitions are not specifically tailored to the bad-debt statute. However, NRS 372.015 makes clear that "the definitions given in NRS 372.020 to 372.095, inclusive, govern the construction of" the Sales and Use Tax Act. Further, this court presumes that the Legislature is aware of the relevant statutory scheme when it enacts a piece of legislation.[4] Because the bad-debt statute is part of Chapter 372 and incorporates terms such as "retailer" that are defined elsewhere within Chapter 372, it appears clear that the Legislature intended *141 these terms to be interpreted in accordance with these definitions.
In its reasoning, the majority ignores the "plain meaning" rule of statutory interpretation for the term "retailer" and argues two rather new, if not unsupported, concepts. Its first concept can best be called the distance rule. Under this rule, the majority contends that if the definitions are found at the beginning of a chapter (not unusual for most of our laws), they are somehow "not specifically tailored to the bad-debt provisions contained later in the Act."[5] This rationale expressly contradicts NRS 372.015. Further, I know of no case that suggests that this court can modify or disregard a definition based on its location in a chapter of the NRS from the statute under review.
The second concept used by the majority can best be described as the "piling on" or "bootstrapping" of definitions concept. Here, the majority criticizes DaimlerChrysler for using several broad definitions to distort uncontested facts or defeat clear statutory directives. However, the majority has failed to identify what uncontested facts are being distorted or how a statutory directive is defeated by the use of statutory definitions applicable to all statutes in the same chapter. Neither of these novel concepts has been used by this court in the past to interpret statutes, and I would strongly urge my colleagues against doing so in the future. These approaches to statutory interpretation subject the laws of this state to uncertainty and unpredictability when we should be trying to achieve just the opposite outcome.
I can perceive no discernable difference between NRS 372.365(5) and Washington's bad-debt statute at issue in Puget Sound National Bank v. Department of Revenue.[6] The statutory scheme addressed in Puget Sound entitled retail sellers to "a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes,"[7] defined "sellers" as "person[s]"[8] making retail sales, and defined a "person" as including an "assignee."[9] Within that framework, the Washington Supreme Court determined that third-party financing entities, given rights under retail credit assignment agreements, were eligible to claim bad-debt sales tax refunds.[10]
The majority notes that a number of other jurisdictions have refused to extend bad-debt relief to third-party financing entities.[11] However, a careful examination of the statutes in each of the other states shows that they are quite different from our statutory scheme. The differences are best described by the Court of Appeals of Tennessee in SunTrust Bank, Nashville v. Johnson, when it noted
Two other jurisdictions, Nevada and Washington, have construed their bad debt sales tax credit statutes to permit the assignee of the automobile dealer to receive a credit or refund when the purchaser subsequently defaults on the retail installment contract. However, in both jurisdictions, the statutory definitions of "dealer" or "retailer" and "person" were broad enough to include an assignee of a dealer or retailer.[12]
The majority also argues that our bad-debt statute provides for relief in the form of a *142 credit, not a refund. As a consequence, the majority concludes that the "use of the credit device for relief structurally eliminates third-party lenders from its protection."[13] Once again, the majority either ignores or overlooks the express language in the bad-debt statute.[14] The final sentence in that statute omitted from the majority opinion reads, "The credit may be used against the amount of sales tax that the retailer is subsequently required to pay pursuant to this chapter." This language makes clear that the retailer may apply the bad-debt relief credit to future sales tax obligations. But the choice belongs to the retailer and in no way creates any statutory structure prohibiting a retailer from demanding a refund of the bad-debt credit.
Going further, NRS 372.700, relied upon by the majority, does not, by its plain language, compel the result sought by the Department. NRS 372.700 provides as follows:
A judgment may not be rendered in favor of the plaintiff in any action brought against the Department to recover any amount paid when the action is brought by or in the name of an assignee of the person paying the amount or by any person other than the person who paid the amount.

(Emphasis added.) This language is ambiguous in the context of the true nature of the transactions involved in this case. Thus, I would construe NRS 372.700 in accord with legislative intent and to avoid reaching an absurd result. To explain, the original retail sales transactions included a contemporaneous assignment of the installment contracts to DaimlerChrysler. DaimlerChrysler funded these purchases, including the sales tax, and the dealer forwarded the tax payment to the Department. Despite the fact that the dealer physically forwarded the tax payment to the Department, I would conclude that DaimlerChrysler, under NRS 372.700, was "the person who paid the amount" of the taxes on the underlying vehicle contracts.
The Department further contends that the dealers, having received the full amount financed from DaimlerChrysler, incurred no losses due to bad debts and, thus, enjoyed no refund rights. The Department then reasons that DaimlerChrysler could not ascend to rights unavailable to its assignor. I disagree. Rights under the installment contracts between the purchasers and the dealers were assigned to DaimlerChrysler. Those rights included the rights generally available to creditors under installment sales agreements. In short, the dealers sold their rights in the event of purchaser default to DaimlerChrysler.
The majority's formalistic interpretation of the bad-debt statute fails to account for the reality of the modern marketplace, in which third-party vehicle financing arrangements are the norm.[15] The Department's position likewise runs counter to the apparent intent of the Legislature in passing the bad-debt statute: to alleviate the tax burden of entities that paid the full sales tax due on behalf of a purchaser who later defaults on the loan.[16] Certainly, the circumstances of this case justify DaimlerChrysler's eligibility for bad-debt relief.

CONCLUSION
NRS 372.365(5) entitles DaimlerChrysler to bad-debt relief. DaimlerChrysler did not *143 receive a discount in its purchase of vehicle financing contracts but paid the full amount financed, including the full amount of sales tax. Therefore, DaimlerChrysler should receive tax relief proportionate to the sales tax remaining on the defaulted contracts. Accordingly, I would affirm the district court's decision to grant DaimlerChrysler's petition for judicial review.
NOTES
[1] NRS 372.365(5) will be repealed and replaced, effective January 1, 2006, by NRS 372.368. See 2003 Nev. Stat., ch. 400, §§ 46, 57, at 2366-67, 2370.
[2] City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).
[3] Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003).
[4] NRS 372.055(1)(a), (c) (emphasis added).
[5] 123 Wash.2d 284, 868 P.2d 127, 129 (1994).
[6] Wash. Rev.Code § 82.08.037.
[7] Id. § 82.08.010(2).
[8] Id. § 82.04.030.
[9] See Puget Sound, 868 P.2d at 132.
[10] See, e.g., DaimlerChrysler v. Weiss, No. 04-284, ___ Ark. ___, ___ S.W.3d ___, 2004 WL 2904685 (Ark. Dec.16, 2004); Weiss v. American Honda, No. 04-617, ___ Ark. ___, ___ S.W.3d ___, 2004 WL 2904680 (Ark. Dec.16, 2004); Chrysler Financial Co., L.L.C. v. Wilkins, 102 Ohio St.3d 443, 812 N.E.2d 948 (2004); In re Appeal of Ford Motor Credit Co., 275 Kan. 857, 69 P.3d 612 (2003); DaimlerChrysler v. State Tax Assessor, 817 A.2d 862 (Me.2003); Department of Revenue v. Bank of America, 752 So.2d 637 (Fla.Dist.Ct.App.2000); General Motors Acceptance v. Jackson, 247 Ga.App. 141, 542 S.E.2d 538 (2000); SunTrust Bank, Nashville v. Johnson, 46 S.W.3d 216 (Tenn.Ct.App.2000).
[11] Chrysler Financial, 812 N.E.2d at 951; DaimlerChrysler, 817 A.2d at 866.
[12] Chrysler Financial, 812 N.E.2d at 950.
[13] Weiss, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904680, at *2; DaimlerChrysler, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904685, at *2; General Motors Acceptance, 542 S.E.2d at 541; Bank of America, 752 So.2d at 644; In re Appeal of Ford Motor Credit Co., 69 P.3d at 620; SunTrust Bank, 46 S.W.3d at 224.
[14] DaimlerChrysler Services v. CIR, 274 Conn. 196, 875 A.2d 28, 30-36 (2005).
[15] Id. at 32 (quoting Interlude, Inc. v. Skurat, 266 Conn. 130, 831 A.2d 235, 241-42 (2003)).
[16] Id. at 39 (citing, among other cases, Department of Revenue v. Bank of America, 752 So.2d 637, 643 (Fla.Dist.Ct.App.2000) ("[s]ince the issue in this case involves a tax refund, general principles of statutory construction, together with the principles governing proper construction of tax statutes, should prevail over general assignment principles"); General Elec. Capital v. New York State, 301 A.D.2d 819, 754 N.Y.S.2d 84, 86 (2003) ("It cannot be doubted that the statute, as written, refers to credits or refunds only to vendors inasmuch as only vendors are possessed of `taxable receipts.' Accordingly, there was nothing irrational in promulgating [a statute] which limited such credits or refunds to vendors and excluded third-party assignees." (citation omitted)); and In re Appeal of Ford Motor Credit Co., 275 Kan. 857, 69 P.3d 612, 621 (2003) ("Although not specifically limited to the retailer paying the [sales] tax, the definition of retailer [in the relevant statute and regulation] is not broad enough to include the assignee of such retailer. We will not extend by implication the clear import of that definition to include an assignee of the retailer.")).
[17] Chrysler Financial, 812 N.E.2d at 950; DaimlerChrysler Services, 875 A.2d at 40.
[18] Weiss, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904680, at *1; DaimlerChrysler, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904685, at *1.
[19] Weiss, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904680, at *3; DaimlerChrysler, ___ Ark. at ___, ___ S.W.3d at ___, 2004 WL 2904685, at *3.
[20] West's NRSA 372.050; Bing Constr. v. State, Dep't of Taxation, 109 Nev. 275, 279, 849 P.2d 302, 304 (1993).
[21] NRS 372.365(5).
[22] 1997 Nev. Stat., ch. 304, § 1, at 1105.
[23] DaimlerChrysler, 817 A.2d at 865. Contra SunTrust Bank, 46 S.W.3d at 220 n. 1.
[24] DaimlerChrysler, 817 A.2d at 865.
[25] See NRS 372.040; NRS 372.055.
[26] Sierra Pac. Power v. Department Taxation, 96 Nev. 295, 297, 607 P.2d 1147, 1148-49 (1980).
[27] See Imperial Palace v. State. Dep't Taxation, 108 Nev. 1060, 1067, 843 P.2d 813, 818 (1992).
[28] See Galloway v. Truesdell, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) ("The maxim `EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS', the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State.").
[29] Hearing on A.B. 535 Before the Assembly Taxation Comm., 69th Leg. (Nev., June 12, 1997).
[30] Id.
[31] Id.
[32] Id.
[1] City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).
[2] Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003).
[3] The NRS 372.055 definition of "retailer" includes two other categories of sellers or persons. The majority references the first of these as "[e]very seller who makes any retail sale or sales of tangible personal property." However, this reference is not applicable because "seller" is defined at NRS 372.070 "as every person engaged in the business of selling tangible personal property." Although DaimlerChrysler sells repossessed vehicles on occasion, it does not rely on the NRS 372.070 "seller" definition to come within the bad-debt statute.
[4] See City of Boulder v. General Sales Drivers, 101 Nev. 117, 118-19, 694 P.2d 498, 500 (1985) ("It is presumed that in enacting a statute the legislature acts with full knowledge of existing statutes relating to the same subject.").
[5] See majority opinion ante p. ___, 119 P.3d at p. 139.
[6] 123 Wash.2d 284, 868 P.2d 127, 129 (1994).
[7] Wash. Rev.Code § 82.08.037.
[8] Id. § 82.08.010(2).
[9] Id. § 82.04.030.
[10] See Puget Sound, 868 P.2d at 132.
[11] See, e.g., DaimlerChrysler v. Weiss, No. 04-284, ___ Ark. ___, ___ S.W.3d ___, 2004 WL 2904685 (Ark. Dec.16, 2004); Weiss v. American Honda, No. 04-617, ___ Ark. ___, ___ S.W.3d ___, 2004 WL 2904680 (Ark. Dec.16, 2004); Chrysler Financial Co., L.L.C. v. Wilkins, 102 Ohio St.3d 443, 812 N.E.2d 948 (2004); In re Appeal of Ford Motor Credit Co., 275 Kan. 857, 69 P.3d 612 (2003); DaimlerChrysler v. State Tax Assessor, 817 A.2d 862 (Me.2003); Department of Revenue v. Bank of America, 752 So.2d 637 (Fla.Dist.Ct.App.2000); General Motors Acceptance v. Jackson, 247 Ga.App. 141, 542 S.E.2d 538 (2000); SunTrust Bank, Nashville v. Johnson, 46 S.W.3d 216 (Tenn.Ct.App.2000).
[12] 46 S.W.3d at 225 (citing Puget Sound, 868 P.2d at 130; 2000-08 Op. Att'y Gen., 2000 WL 246660, *2 (withdrawn)).
[13] See majority opinion ante p. ___, 119 P.3d at p. 139.
[14] NRS 372.365(5).
[15] The Department, citing Shetakis Distributing v. State, Department Taxation, 108 Nev. 901, 907, 839 P.2d 1315, 1319 (1992), urges this court to undertake strict interpretation of the statute because relief afforded under the statute is analogous to a tax exemption. I would decline to utilize this method of interpretation because it would produce an unreasonable result in this case, namely providing a windfall to the State. See Hughes Properties v. State of Nevada, 100 Nev. 295, 297, 680 P.2d 970, 971 (1984).
[16] The Department asserts that legislative history bars DaimlerChrysler's claim for bad-debt relief and relies on committee minutes discussing A.B. 535, the bill that amended the bad-debt statute in 1997. See A.B. 535, 69th Leg. (Nev.1997). Specifically, the Department refers to a comment by a lobbyist, stating that the bill's fiscal note did not account for third-party credit. I find this comment and other commentary on the bill insufficient to establish any legislative intent to bar bad-debt relief to financial institutions in this case.