139 Nev., Advance Opinion 46

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

TYLER JAMES BOLDEN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 85099-COA

FILED

OCT 19 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, entered pursuant to a guilty plea, of attempted lewdness with a child under the age of 14 years. Eighth Judicial District Court, Clark County; Jasmin D. Lilly-Spells, Judge.

*Affirmed in part, vacated in part, and remanded.*

JoNell Thomas, Special Public Defender, and Melinda Simpkins and Robert Arroyo, Chief Deputy Special Public Defenders, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Alexander G. Chen, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

23-34039

## OPINION

By the Court, WESTBROOK, J.:

At his sentencing, appellant Tyler James Bolden objected to the imposition of extradition restitution as well as the cost of a psychosexual evaluation on the basis that he lacked the ability to pay. Over his objection, the district court ordered Bolden to pay both the restitution and the full evaluation cost but waived the $25 administrative assessment fee required under NRS 176.062(1).

In this appeal, we consider whether and to what extent the district court must make an investigative inquiry into a defendant's ability to pay extradition restitution under NRS 179.225(2) before ordering the defendant to pay that restitution. We also consider whether NRS 176.139(7) requires the district court to make a similar inquiry prior to requiring the defendant to pay the psychosexual evaluation cost.

We conclude that the plain language of NRS 179.225(2) requires the district court to inquire, prior to sentencing, into the defendant's ability to pay extradition restitution in light of any existing obligations for child support, victim restitution, or administrative assessments. NRS 179.225(2)(a)-(c). The district court's statutory duty is satisfied by asking the defendant whether they have any such obligations that would be impacted by the imposition of extradition restitution and by determining whether the defendant is able to pay such obligations or, alternatively, if extradition restitution would prevent the defendant from satisfying those obligations.

In contrast, we conclude that the plain language of NRS 176.139(7) does not require the district court, sua sponte, to conduct a similar investigative inquiry before requiring a defendant to pay for the cost

of a psychosexual evaluation. Rather, it is incumbent upon the defendant to object to the psychosexual evaluation cost based on their inability to pay, and the defendant bears the burden to substantiate that inability to pay before the court can reduce or waive the psychosexual evaluation cost. However, once a defendant has done so, the court must make findings on the record as to the extent of the defendant's ability to pay and must impose the cost of the psychosexual evaluation only to that extent.

In this case, because the district court did not undertake an investigative inquiry prior to ordering Bolden to pay extradition restitution under NRS 179.225(2) or address Bolden's alleged inability to pay the psychosexual evaluation cost following his timely and substantiated objection, we affirm the judgment of conviction, vacate the sentence as to restitution and the cost of the psychosexual evaluation, and remand for resentencing.

## PROCEDURAL AND FACTUAL HISTORY

After being extradited from Michigan to Nevada, Bolden entered into negotiations with the State to plead guilty to one count of attempted lewdness with a child under the age of 14 years. His negotiation included an agreement to pay extradition restitution, if any was ordered, and an agreement to undergo a psychosexual evaluation pursuant to NRS 176.139.

At the sentencing hearing, the State requested that the court impose restitution for extradition expenses in the amount of $3525, as well as the cost of Bolden's psychosexual evaluation in the amount of $1689.30. Bolden objected to both the extradition restitution and psychosexual evaluation cost and claimed that he did not have the ability to pay either amount. Bolden specifically referenced NRS 179.225 in support of his assertion that the extradition restitution should be waived. The district

court reviewed NRS 179.225 and stated that it "read that statute only to say that the Administrative Assessment fee can be [waived.]" After sentencing Bolden to a term of 42 to 144 months in prison, the district court did "not find a basis to waive the extradition cost" and imposed both the extradition restitution and psychosexual evaluation cost in full but waived the $25 administrative assessment required under NRS 176.062(1). Bolden now appeals, challenging the imposition of the restitution for his extradition expenses and the cost of his psychosexual evaluation.

## ANALYSIS

In this appeal, we address the following issues: (1) whether and to what extent NRS 179.225(2) requires the district court to conduct an investigative inquiry into the defendant's ability to pay before ordering the defendant to pay extradition restitution, and (2) whether NRS 176.139(7) imposes a similar investigative requirement on the district court to inquire as to the defendant's ability to pay the cost of a psychosexual evaluation before ordering the defendant to pay that cost.

The decision to impose restitution under NRS 176.033(3), including extradition restitution pursuant to NRS 179.225, is a sentencing determination. *Martinez v. State*, 115 Nev. 9, 12, 974 P.2d 133, 135 (1999).[1] The district court has broad discretion when sentencing a defendant, and "in the absence of a showing of abuse of such discretion, we will not disturb the sentence." *Parrish v. State*, 116 Nev. 982, 988-89, 12 P.3d 953, 957 (1980) (quoting *Deveroux v. State*, 96 Nev. 388, 390, 610 P.2d 722, 724

---

[1]We note that although *Martinez* addressed restitution to victims of crime under NRS 176.033(3) (formerly codified as NRS 176.033(1)(c), *see* 2019 Nev. Stat., ch. 633, § 10.5, at 4382), the same statute provides for both restitution to victims of crime as well as restitution to the State of Nevada or other governmental entity for extradition expenses.

(1980)). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

*Imposition of extradition restitution*

Bolden first contends that the district court abused its discretion when it imposed extradition restitution without first investigating his ability to pay under NRS 179.225(2).[2] To evaluate this argument, we must engage in statutory interpretation, which, like other questions of law, we review de novo. *See Doolin v. State, Dep't of Corr.*, 134 Nev. 809, 811, 440 P.3d 53, 55 (Ct. App. 2018). "The goal of statutory interpretation is to give effect to the Legislature's intent." *Id.* (internal quotation marks omitted). To determine the Legislature's intent, we begin by looking at the statute's plain language. *Id.* In doing so, we "interpret a rule or statute in harmony with other rules or statutes." *Id.* (internal quotation marks omitted).

Here, the relevant language is contained in subsections (2) and (3) of NRS 179.225:

> 2. If a person is returned to this State pursuant to this chapter or chapter 178 of NRS and is convicted of, or pleads guilty, guilty but mentally ill or nolo contendere to, the criminal charge for which the person was returned or a lesser criminal charge, the court shall conduct an investigation of the financial status of the person to determine the ability to make restitution. In conducting the

---

[2]NRS 179.225 addresses only extradition restitution. Accordingly, unless specifically noted otherwise, our discussion herein applies only to extradition restitution and not to any other type of restitution.

investigation, the court shall determine if the person is able to pay any existing obligations for:

(a) Child support;

(b) Restitution to victims of crimes; and

(c) Any administrative assessment required to be paid pursuant to NRS 62E.270, 176.059, 176.0611, 176.0613, 176.062 and 176.0623.

3. If the court determines that the person is financially able to pay the obligations described in subsection 2, it shall, in addition to any other sentence it may impose, order the person to make restitution for the expenses incurred by the Office of the Attorney General or other governmental entity in returning the person to this State. The court shall not order the person to make restitution if payment of restitution will prevent the person from paying any existing obligations described in subsection 2. Any amount of restitution remaining unpaid constitutes a civil liability arising upon the date of the completion of the sentence.

Under the plain language of NRS 179.225(2), the district court is required to undertake an investigative inquiry in all extradition cases that result in a conviction. *See Thomas v. State*, 88 Nev. 382, 384, 498 P.2d 1314, 1315 (1972) (recognizing that "shall" is generally construed as mandatory). The subject matter of that inquiry is mandated by statute: the court "shall" inquire into "the financial status of the person to determine the ability to make restitution." NRS 179.225(2). In doing so, the district court "shall" inquire if the defendant has the ability to pay any existing obligations for child support, victim restitution, or administrative assessments as listed in NRS 179.225(2)(a)-(c).

The purpose of the investigative inquiry is not to determine whether the defendant has the present ability to pay extradition restitution in a general sense. Rather, the second sentence of NRS 179.225(2) narrows

the scope of that inquiry to require *only* an investigation into the defendant's ability to pay existing obligations within the three categories listed in NRS 179.225(2)(a)-(c): child support, victim restitution, and administrative assessments.

This limited investigatory purpose is further supported by the text of NRS 179.225(3), which mandates two alternative outcomes, depending on the defendant's ability to pay for the specific obligations listed in subsection 2. If the court determines that the defendant is "financially able to pay the obligations described in subsection 2," then extradition restitution "shall" be ordered. *See Thomas*, 88 Nev. at 384, 498 P.2d at 1315. On the other hand, the court "shall not" order the defendant to pay extradition restitution "if payment of restitution will prevent the person from paying" the existing obligations listed in subsection 2. NRS 179.225(3).

Because the consequences set forth in subsection 3 relate only to the defendant's ability to pay for the three categories of obligations listed in subsection 2, it follows that the scope of the court's investigative inquiry in extradition restitution cases is limited to ascertaining the defendant's ability to pay for the enumerated obligations. *See City of Henderson v. Amado*, 133 Nev. 257, 259, 396 P.3d 798, 800 (2017) (explaining that appellate courts construe statutes "as a whole," while reading statutes "in a manner that makes the words and phrases essential and the provisions consequential"); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

Although the plain language of NRS 179.225(2) is not ambiguous, and thus it is not necessary to resort to legislative history, we nevertheless note that the legislative history supports our construction of the statute. *See Gilman v. Clark Cty. Sch. Dist.*, 139 Nev., Adv. Op. 7, 527 P.3d 624, 629 (Ct. App. 2023). When NRS 179.225(2) was enacted, the Legislature intended the obligations listed in NRS 179.225(2) to be prioritized over extradition restitution in this situation. Hearing on A.B. 465 Before the S. Judiciary Comm., 67th Leg. (Nev., May 14, 1993).[3] The legislative history of NRS 179.225 indicates that the purpose of the statute was to ensure that existing obligations for child support, victim restitution, and administrative assessments were paid; this further comports with the plain language of NRS 179.225(3), which exclusively concerns the payment of existing obligations and prohibits the district court outright from imposing extradition restitution if doing so would prevent the satisfaction of those obligations.

Therefore, when conducting an investigation under NRS 179.225(2), the district court is required to ascertain whether the defendant has any existing obligations listed in NRS 179.225(2)(a)-(c) and, if so, determine if the imposition of extradition restitution would impact the defendant's ability to satisfy those obligations. The court is not required to

---

[3]We also recognize that the importance of prioritizing victim restitution was reaffirmed by the passage of Marsy's Law, which entitles crime victims "to have all monetary payments, money and property collected from any person who has been ordered to make restitution be first applied to pay the amounts ordered as restitution to the victim." *See* Nev. Const. art. 1, § 8A(1)(p).

independently investigate whether the defendant has the ability to pay restitution generally outside the parameters of those existing obligations.[4]

Notably, NRS 179.225(2) is silent regarding *how* the district court must conduct this investigation. Because the plain language of the statute does not include any specific procedural requirements, the particular manner in which the district court undertakes this investigation remains in the court's discretion. Thus, the district court may satisfy its statutory duty by asking the defendant brief questions on the record to ascertain whether the defendant has any existing obligations listed in NRS 179.225(2)(a)-(c), their ability to pay such obligations, and whether ordering extradition restitution would prevent the defendant from paying such obligations.[5] The district court's finding regarding a defendant's ability to

---

[4]We note that when determining restitution to a crime victim, the district court is not required to consider the defendant's ability to pay. *See Martinez*, 115 Nev. at 13, 974 P.2d at 135 (concluding that "there is no requirement that the district court consider a defendant's ability to pay in determining at sentencing the amount of restitution" to a battery victim (citing NRS 176.015)). Unlike restitution to a crime victim, which does not require consideration of a defendant's ability to pay in the procedures outlined in NRS 176.015, *see id.*, the inquiry outlined in NRS 179.225(2) *does* expressly require the district court to consider the defendant's ability to pay before imposing extradition restitution to the extent that it impacts the defendant's ability to pay the existing obligations enumerated in the statute. Nothing in this opinion should be construed as restricting the district court's discretion beyond what is already provided by law in determining the priority of payments. *See, e.g.*, Nev. Const. art. 1, § 8A(1)(p) (prioritizing payments to satisfy victim restitution); NRS 209.463(3), (4) (detailing the priority in which deductions from inmates' wages must be applied).

[5]We note that both the child support obligations enumerated in NRS 179.225(2)(a) and the "administrative assessments required *to be paid*" enumerated in NRS 179.225(2)(c) (emphasis added) contemplate

COURT OF APPEALS
OF
NEVADA

(O) 1947B

pay is a factual determination entitled to deference on appeal. *See, e.g.,* *Sunseri v. State,* 137 Nev. 562, 564, 495 P.3d 127, 131 (2021) ("[T]his court gives deference to the district court's factual findings as long as they are supported by the record.").

The State argues on appeal that the district court did not abuse its discretion in imposing the extradition restitution in this case because Bolden agreed to pay this restitution in his plea agreement. While the plea agreement states that Bolden will be ordered to reimburse the State of Nevada for any expenses related to his extradition, the State fails to demonstrate that this plea provision absolved the district court of its duty to ensure that Bolden would be able to pay the obligations listed in NRS 179.225(2). Further, requiring the district court to impose extradition restitution without considering the obligations in NRS 179.225(2)(a)-(c) would subvert the legislative intent of the statute to prioritize the existing obligations over extradition restitution. *See* Hearing on A.B. 465 Before the S. Judiciary Comm., 67th Leg. (Nev., May 14, 1993).

Bolden contends that when the district court waived the $25 administrative assessment, it was precluded from imposing extradition restitution under NRS 179.225(3) because the waiver constituted a finding that Bolden lacked the ability to pay extradition restitution. However, the record does not reflect that the district court made any express finding regarding Bolden's ability to pay restitution.

---

prospective payments. Accordingly, the statute clearly indicates that the district court should consider not just *pre*existing obligations, but also those being imposed contemporaneously in the case before the court. *See Ford v. State,* 127 Nev. 608, 622 n.8, 262 P.3d 1123, 1132 n.8 (2011) (stating the supreme court has "long adhere[d] to the doctrine of *noscitur a sociis* (words are known by—acquire meaning from—the company they keep)").

In this case, because the record does not reflect that the district court investigated whether Bolden had any existing obligations under NRS 179.225(2)(a)-(c) that would be impacted by an award of extradition restitution, we cannot determine if the court was required to impose or prohibited from imposing restitution under NRS 179.225(3).[6] Because the district court imposed extradition restitution without conducting the investigative inquiry required under NRS 179.225(2), we conclude that the district court abused its discretion.

On remand, we direct the district court to comply with the mandatory provisions of NRS 179.225. The court shall inquire whether Bolden has existing obligations for child support, victim restitution, or administrative assessments. If Bolden has existing obligations, then the court must make a determination on the record as to whether he is able to pay such obligations or, alternatively, if extradition restitution would prevent Bolden from satisfying those obligations; NRS 179.225(3) either requires the court to impose or prohibits the court from imposing extradition restitution based on the outcome of that determination.

*Imposition of the psychosexual evaluation cost*

We next turn to Bolden's second contention, that the district court erred when it imposed the cost of Bolden's psychosexual evaluation

---

[6]A presentence investigation report can provide information regarding a defendant's existing obligations. *See* NRS 176A.200 ("The Division shall inquire into the circumstances of the offense, criminal record, social history and present condition of the defendant."); NRS 176.145(1) (requiring the report to contain information regarding the defendant's financial condition, the financial loss to the victim, and whether the defendant has an obligation for the support of a child). However, the district court still must investigate and determine whether the information in the presentence investigation report is accurate as of the time of sentencing.

without first conducting an inquiry into his ability to pay or making factual findings regarding his inability to pay. While we find that the district court abused its discretion by failing to account for Bolden's inability to pay under these circumstances, we disagree with Bolden's claim that the district court is, sua sponte, required to conduct an investigative inquiry, similar to that required by NRS 179.225(2), before imposing the cost of a psychosexual evaluation.

NRS 176.139(7) states, "If a psychosexual evaluation is conducted pursuant to this section, the court shall . . . [o]rder the defendant, to the extent of the defendant's financial ability, to pay for the cost of the psychosexual evaluation." Unlike NRS 179.225(2), which expressly provides that the district court must undertake an investigative inquiry to determine the defendant's ability to pay when determining extradition restitution, NRS 176.139(7) states only that the court shall order the defendant to pay the cost of the psychosexual evaluation "to the extent of the defendant's financial ability." On its face, the plain language of NRS 176.139(7) does not require the district court to initiate any investigative inquiry. *Ramos v. State*, 137 Nev. 721, 722, 499 P.3d 1178, 1180 (2021) (stating that when interpreting a statute, the appellate courts first look to the statute's plain language to determine its meaning and will enforce it as written if the language is clear and unambiguous); *cf.* NRS 179.225(2).

"Nevada follows the maxim 'expressio unius est exclusio alterius,' the expression of one thing is the exclusion of another." *State v. Javier C.*, 128 Nev. 536, 541, 289 P.3d 1194, 1197 (2012). Additionally, "Nevada law also provides that omissions of subject matters from statutory provisions are presumed to have been intentional." *Dep't of Tax'n v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 548, 119 P.3d 135, 139

(2005).[7] Because NRS 179.225(2) contains an express obligation that the district court must conduct an inquiry into the defendant's ability to pay before imposing extradition restitution, the omission of similar language from NRS 176.139(7) is presumed intentional.[8] *Id.* Therefore, we decline to read an investigative obligation into NRS 176.139(7) where the statute does not expressly require it. *See Abid v. Abid*, 133 Nev. 770, 773, 406 P.3d 476, 479 (2017) (declining to read a suppression remedy into a statute, "especially when our Legislature has proven in the criminal context that it knows how to write one").

Because NRS 176.139(7) does not require the court to initiate an investigative inquiry into the defendant's ability to pay prior to ordering the defendant to pay the cost of a psychosexual evaluation, it is incumbent upon the defendant to object to the imposition of the cost. *See Jeremias v. State,* 134 Nev. 46, 412 P.3d 43 (2018) ("The failure to preserve an error . . . forfeits the right to assert it on appeal."). If the defendant objects to the psychosexual evaluation cost based on an inability to pay that amount, then the defendant must also provide substantiation of their

---

[7]*See also,* J.A. Corry, *Administrative Law and the Interpretation of Statutes,* 1 U. Toronto L.J. 286, 298 (1936):

> [I]f Parliament in legislating speaks only of specific things and specific situations, it is a legitimate inference that the particulars exhaust the legislative will. The particular which is omitted from the particulars mentioned is the *casus omissus,* which the judge cannot supply because that would amount to legislation.

[8]We note that the pertinent portion of NRS 179.225 was enacted in 1993, *see* 1993 Nev. Stat., ch. 331, § 3, at 935-36; and the pertinent portion of NRS 176.139 was enacted in 1997, *see* 1997 Nev. Stat., ch. 449, § 3, at 1638.

inability to pay. *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 805, 102 P.3d 41, 46 (2004) ("The initial burden of establishing indigency is on the defendant." (citing to *Nikander v. Dist. Court in & for First Judicial Dist.*, 711 P.2d 1260, 1262 (Colo. 1986))); *see also Widdis v. Second Judicial Dist. Court*, 114 Nev. 1224, 1229, 968 P.2d 1165, 1168 (1998) (placing the burden "squarely on the defendant" to demonstrate indigency).

Like an indigency determination, the determination of a defendant's ability to pay the cost of a psychosexual evaluation is a factual determination that remains within the sound discretion of the district court. *See Rodriguez*, 120 Nev. at 807, 102 P.3d at 47 (citing *Nikander*, 711 P.2d at 1262). When determining the defendant's ability to pay, the court may consider evidence such as whether the defendant was represented by appointed counsel, a financial affidavit that establishes indigency, the presentence investigation report, the defendant's current or prospective custody status, or other evidence of their financial inability to pay the psychosexual evaluation cost. *See Gilbert v. State*, 99 Nev. 702, 704 n.1, 669 P.2d 699, 700 n.1 (1983) (noting appellant's indigency status was supported in the presentence report and because appellant was represented by a public defender); *Nikander*, 711 P.2d at 1262 (stating that factors to consider when determining indigency "include whether the defendant has any dependents, whether he is employed, income from all sources, real and personal property owned, extent of any indebtedness, necessary living expenses," and state and federal poverty guidelines); *cf. Widdis*, 114 Nev. at 1229-30, 968 P.2d at 1168-69 (issuing a writ of mandamus directing the district court to make an indigency determination because an affidavit of indigency was filed while appellant was incarcerated, but the appellant was subsequently released on bail and began immediate full-time employment).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

If the court determines the defendant is indigent or unable to pay the full psychosexual evaluation cost, the district court must reduce that cost. NRS 176.139(7). Unlike NRS 179.225(3), which prohibits the court from imposing any extradition restitution under certain circumstances, NRS 176.139(7) requires the court to order the psychosexual evaluation cost only "to the extent of the defendant's financial ability." The proviso "to the extent of" immediately precedes the limitation regarding the defendant's ability to pay and qualifies the district court's otherwise mandatory obligation to impose the psychosexual evaluation cost. *See State v. Beemer*, 51 Nev. 192, 192, 272 P. 656, 658 (1928) (explaining that the "natural and appropriate office of the proviso being to restrain or qualify some preceding matter," a statutory proviso "should be construed with reference to the immediately preceding parts of the clause to which it is attached" (internal quotation marks omitted)).

In this case, Bolden made a timely objection to the psychosexual evaluation cost based on his inability to pay. Although we note that Bolden made only bare assertions of his inability to pay, he was also represented in court proceedings by the Clark County Special Public Defender's Office, and therefore, the lower court had already made a finding of indigency that would entitle Bolden to the appointment of counsel. Moreover, the State does not seem to dispute Bolden's indigent status. *Gilbert*, 99 Nev. at 704 n.1, 669 P.2d at 700 n.1.[9] While NRS 176.139(7) does not mandate that the

---

[9]Bolden contends on appeal that the district court's file contained his financial affidavit, which Bolden submitted to qualify for the appointment of counsel and which verified his indigent status. The State disagrees as to Bolden's specific assets and income identified in the financial affidavit but otherwise does not dispute that the financial affidavit was available to the district court.

psychosexual evaluation cost be waived in every circumstance where there has been a finding of indigency, Bolden's timely objection, coupled with evidence of his indigent status, was sufficient to require the district court to *evaluate* the psychosexual evaluation cost in relation to Bolden's ability to pay in whole or in part and make findings on the record. Because the district court made no findings as to Bolden's ability to pay the psychosexual evaluation cost before it imposed the cost in full, we conclude that the district court abused its discretion. On remand, we direct the district court to consider Bolden's ability to pay for the psychosexual evaluation and make findings on the record. In doing so, we remind the court that it shall impose such cost only "to the extent of the defendant's financial ability[ ] to pay" it. NRS 176.139(7).

## CONCLUSION

We conclude that NRS 179.225(2) requires the district court to undertake an investigative inquiry prior to imposing extradition restitution. In this case, the district court abused its discretion by imposing the extradition restitution without first determining whether Bolden had the ability to pay any existing obligations for child support, victim restitution, or administrative assessments. As a result, the court could not determine whether imposing restitution was mandatory or prohibited under NRS 179.225(3).

Further, while the district court is not required to undertake a similar investigative inquiry before imposing the cost of a psychosexual evaluation under NRS 176.139(7), the court is statutorily required to impose the cost only to the extent of the defendant's ability to pay. Bolden timely objected on the basis of his inability to pay, which was supported by evidence in the record, and the district court abused its discretion by imposing the full cost without first evaluating Bolden's ability to pay and

making findings on the record. Accordingly, we affirm the judgment of conviction, but we vacate Bolden's sentence as to extradition restitution and the cost of the psychosexual evaluation and remand to the district court for resentencing.[10]

_____, J.
Westbrook

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

---

[10]We also conclude that the district court erred by failing to impose the $25 administrative assessment as mandated by NRS 176.062(1). The statute provides that the court "shall" impose the assessment and does not include any waiver provisions. On remand, we direct the district court to impose the administrative assessment.